BRUSH M. WEBB *v.* THE TOWN OF BURLINGTON.

*Assessment of trust property.    State stocks taxable.*

Property bequeathed to, and held by a trustee, the interest or income of which is to
be paid to a person during life, and after her decease the principal to be paid to
the testator's heirs at law, is assessable, (under Comp. Stat. Chap. 80, § 15,) to the
person entitled to the income.

A person residing here, who owns, or is interested in the stocks of other states, may
be legally assesed therefor in this state.

ASSUMPSIT to recover money paid by the plaintiff for taxes,
assessed against Orissa B. Keeler, his wife. Plea, the general
issue; trial by the court, November Term, 1855,—PIERPOINT, J.,
presiding.

The following facts were agreed upon: William H. Keeler
died in 1849, and by his last will gave, among other bequests, ten
thousand dollars in the government stock of some one of the United
States to Richard G. Cole, in trust, that the interest and income
thereof might be for the use and benefit of his wife Orissa B. Keeler,
during her natural life, and, upon her death, the principal to be paid
to the testator's then heirs at law. His executor, soon after the pro-
bate of the will, and in pursuance of its provisions, transferred to said
Cole certificates of Ohio state stocks, for $10,000, bearing six per cent
interest, in trust for the said Orissa, as provided in the will. The
said Cole accepted the transfer and the trust, and continued to hold
the stock, and pay the interest received thereon annually to the
said Orissa. On the first of April, 1853, and again on the first of
April, 1854, the listers of the town of Burlington, in which the
said Orissa resided at the time of, and since both of those dates,
set in the lists of that town for those years, " Orissa B. Keeler,—
R. G. Cole, trustee,—Ohio state, or other stocks, in the hands of R.
G. Cole, as trustee for her, as a trust fund, $10,000." Upon these
lists taxes were duly assessed by the defendants, and tax bills and
warrants issued for their collection. In September, 1854, the
said Orissa was married to the plaintiff, and in the following Jan-
uary he was compelled to pay, and did pay, to prevent the distrain-
ing and sale of the said Orissa's property, the amount of taxes
assessed against her on said list.

Upon these facts, the county court rendered judgment for the defendants, to which the plaintiff excepted.

*C. Linsley* for the plaintiff.

Personal property is to be assessed to the person who is the owner of it. Comp. Stat. 450, § 4; 452, § 14. It is not intimated in the fifth clause of section 15, (p. 452,) that there is to be any change in the principle of setting property to its owner. " Property held in trust," implies that it is the property of the *cestui que trust.* Mrs. W. is in no sense the owner, nor can she by any possibility become the owner of this stock. It is set apart for the purpose of giving her an annuity, and in trust for the testator's heirs. The stock is not held for her as owner, and to hold that she is taxable for it, would be a departure from the great principle that property shall be taxed to the owner. *Catlin* v. *Hull*, 21 Vt. 158; *Leverett* v. *City of Boston*, 18 Pick. 123.

The property being the stock of a sovereign state, ought to be exempt from taxation, on the same ground that the stocks of the United States are. *Weston et al.* v. *Charleston*, 2 Peters 455–465. *McCullough* v. *Maryland*, 4 Cond. U. S. R. 466.

*G. F. Edmunds* for the defendants.

Mrs. Keeler came within the letter of the law, as the person subject to taxation for this property. Comp. Stat. 452 § 15.

The right of taxation is an inseperable incident of sovereignty. It extends to all persons and property within the state; its only limitation (except that it must be equal,) is to be found only in the sovereign will. The states of Vermont and Ohio are absolutely independent of each other; each, in respect to the other, is sovereign and equal, and is bound to no other respect or consideration of the laws or acts of the other, than comity and policy may dictate; and what they do dictate, is a question for the legislature of each state, and not for the courts.

There is nothing in the constitution of the United States, either expressed or implied, which inhibits such taxation.

The opinion of the court was delivered, at the circuit session in September, 1856, by

REDFIELD, CH. J. I. The first question made in this case is, whether stocks of one of the American states, held by a trustee, under a will, the income of which, only, is to be paid to a married woman, or other person, but the principal of which is, after the the decease of such person, to go into the mass of the estate, and be disposed of, under the will, is to be set in the list, to the person receiving the income, or to the executor of the estate.

The 5th paragraph in § 15 chapter 80 of the Compiled Statutes, seems to us to require the assessment to be made to the person receiving the income. It speaks of the money as being held in trust, but it does not intimate that it must be held in trust, for the person receiving the income, in order to have the assessment made to him. But if held in trust, so that the income is to go to any one, the assessment shall be made to such person, in the town of which such person is an inhabitant. This seems to us purposely so expressed, that it might embrace cases like the present, where the person receiving the income, was never to receive the principal, which is not an uncommon case, and might very naturally have been anticipated by the framers of the statute.

This view might be fortified by the analogies of taxation, generally, falling, as it does, or is intended to, chiefly upon income. And if one person were entitled to the income, and another to the ultimate inheritance, or bequest of the principal, without its returning again into the mass of the estate, no one could question the probable purpose of the legislature, to make the assessment upon the present usufruct.

II. The other question made in the case is one of great importance, and possibly, upon mere comity, not altogether free from difficulty, if the tax upon the owner of state stocks be fairly capable of being viewed as any abridgement of the absolute rights of sovereignty of the state issuing the stock.

But, it seems to us, no such view is fairly maintainable. The sovereignty of a state certainly has no extraterritorial force, or existence. One state has no right, either as an independent foreign sovereignty, or as a member of the great republic of affiliated states, under the constitution, to demand the issue and sale of her public stocks in any other state. The United States government may be

said to possess this right throughout the states and territories, and a specific tax, imposed by the states, upon any of the instruments or functions of the general government, may, undoubtedly, be fairly regarded as an unwarrantable interference with the paramount sovereignty. For it is impossible to deny that the general national government, within the sphere of its just operation, is supreme and paramount to all other sovereignty. We cannot, therefore, question the soundness of the decision of the United States supreme court, in the case of *McCullough* v. *The State of Maryland,* 4 Wheaton 316. [4 Cond. U. S. Sup. Court 466.] The United States bank was upheld by the national tribunals as a necessary fiscal agent, to aid the general government in its financial operations. And although these views no longer obtain, there could be no doubt, that while the national government saw fit to employ such an instrument, in the administration of its functions, any specific tax upon its issues was, so far forth, an abridgment of its powers, and an interference with its functions, thus bringing the two sovereignties in direct conflict, and to that extent in collision, which was certainly at variance with the whole theory of the national government. For if the states could hinder and impede the functions, and retard the operations of the instruments of the national government, they might, by parity of reason, wholly destroy them. And this, as was well said by CH. J. MARSHALL, in his very elaborate and satisfactory opinion, in this case, might be effected at any time, by simply increasing the impost, or tax, upon the issues of the bank. But a tax upon the owners of the stock of the bank, in common with the owners of other stocks, or money, could have no such effect. Such a tax would operate equally upon all property in the state, or upon the inhabitants of the state, in proportion to their income, whether from property within the state, or not. For it has often been decided that a state may impose a tax upon its inhabitants for income derivable from stocks, or other property, without the state. And in the conclusion of this opinion the court takes occasion to say, the decision " does not extend to a tax paid by the real property of the bank, in common with the other real property within the state, nor to a tax imposed on the interest which the citizens of Maryland may

hold in this institution, in common with other property of the same description, throughout the state."

This decision does not intimate any ground upon which a state could be deprived of the right to tax its inhabitants for income resulting from United States bank stocks, or even from their own stocks. But the case of *Weston* v. *The City of Charleston*, 2 Pet. 449, seems to go further, and to prohibit a tax upon income derivable from United States stocks. But this is placed upon the same ground as the specific tax upon the issues of the United States Bank. But it has no application to stocks issued by the states.

And the rule, as applied to the owners of United States stocks, is certainly not without serious ground for question, as the dissenting opinions of Messrs. J. J. JOHNSON and THOMPSON show. And when, if ever, the national stocks shall be swelled to the enormous extent of many European countries, so as to absorb the larger proportion of the national wealth, in personality, it would certainly demand serious consideration, whether any such rule is maintainable, upon just and fair principles of reason and justice, but it seems to be settled as authority, so far as the U. S. supreme court is concerned. But it has always seemed to me that the opinions of J. J. JOHNSON and THOMPSON, and CH. J. MARSHALL, in *Mc Cullough* v. *Maryland,* all which admit that United States stocks, considered as a source of income, may form the basis of personal taxation, contain the soundest view of the subject, and that it will finally prevail in that court.

Judgment affirmed.