CHRISTIANCY J. did not sit.

---

## Detroit and Milwaukee Railroad Company v. Jacob Van Steinburg.

*Evidence: Speed of railroad engine: Expert.* Testimony concerning the speed of a passing train of cars may be given by any one possessing a knowledge of time and distance. It is not a question of science, but of observation.

*Speed of engines: Expert.* A person not connected with the management of a train of cars, but who had been for a long time in positions enabling him to observe the effect of checking a train, is a competent witness to answer how fast a train should have been moving at a certain point to be stopped at the usual place.

*Railroad company: Side tracks: Custom as to ringing bell.* Where a railroad company, at a point of junction, used a portion of the road of another company, merely for the purpose of a side track, in an action against the former company to recover damages for an injury while their cars were on said side track: *Held,* that evidence was inadmissible to show that such latter company were in the habit of ringing their engine bell on approaching the station.

*Evidence as to remarks of by-standers: Error, when cured by charge of court.* While a witness may testify to any fact occurring at the time which calls his attention to that which is transpiring, he can not testify, for any purpose, to what the by-standers may have said afterwards upon a disputed point, as the effect would be to put to the jury hearsay evidence; and when, after the admission of such testimony, under objection, the court charged the jury that they ought not to consider it as proof of a substantive fact; but only proper as evidence that the attention of the witness was called to the subject matter: *Held,* that this instruction did not cure the error.

*Evidence: Written statement: Relevancy.* The plaintiff was asked if he had not made a written statement of the circumstances attending the alleged injury, and he denied having done so. The counsel for the defendant then asked him what he knew about a statement which he, the counsel, then held in his hand. The question was ruled improper. *Held,* that this ruling was correct, as there was nothing in the case to show that the statement had any relevancy.

*Cross-examination.* A witness for the plaintiff testified, on cross-examination, that he had made a written statement about the accident. He was then asked, by counsel for defendant, " Would you recognize a copy of the statement, if it was read over to you?" The Circuit Judge overruled the question, *Held,* correct.

DETROIT AND MILWAUKEE R. R. CO. *v.* VAN STEINBURG.

*Cross-examination, limit of.* A party always has the right to call out, on cross-examination, any facts within the knowledge of the witness which have a tendency to affect or qualify the evidence he had given in chief, whether it points to the same circumstances about which he has testified or not.

*Rebutting evidence: Discretion of Circuit Judge.* After defendants had concluded their testimony, the plaintiff was allowed to call a witness to prove that the train could not be seen from the platform more than fifty or sixty rods. The evidence was objected to, as not properly rebutting, but the Circuit Judge admitted it. *Held,* that, whether properly rebutting or not, the Circuit Judge had a right to admit it, and his decision to do so could not be reviewed. It was not essential that he should state, at the time, that he admitted it under his discretionary power.

*When testimony irrelevant concerning disease, subsequent to an injury.* A witness was allowed to testify for the plaintiff that the latter had dysentery after the injury, and what the effect of that was upon him. As this disease was not traced to the injury, the evidence was held irrelevant and incompetent.

*Rebutting evidence: Skill of engineer.* The defendant having introduced evidence tending to show that the engineer of the train was of average skill, plaintiff was allowed to prove that, on some occasions, he had run his train beyond the station. *Held,* that this evidence was competent to rebut that given by the the plaintiff; but for no other purpose.

*Witness: Discretion of court.* After the evidence on both sides was closed, the defendant offered a witness to be sworn, but under no claim of right. This the court refused. *Held,* that, whether the evidence of the witness should have been admitted or not at that stage of the case, was a question of discretion, on which the decision of the court was final.

*When negligence a question of law or fact.*

1. As a general rule, a question whether a party has been guilty of negligence or not, is one of fact, not of law.

2. Where, however, the plaintiff brings action for a negligent injury, and the action of the two parties must have concurred to produce it, it devolves upon him to show that he was not himself guilty of negligence; and if he gives no evidence to establish that fact, the court may properly instruct the jury that they should return a verdict for defendant.

3. When, however, the question of negligence depends upon a disputed state of facts, or when the facts, though not disputed, are such that different minds might honestly draw different conclusions from them, the court can not give such positive instructions, but must leave the jury to draw their own conclusions upon the facts, and upon the question of negligence depending upon them.

4. To warrant the court in any case in instructing the jury that the plaintiff was guilty of negligence, the case must be a very clear one against him, and which would warrant no other inference.

*Heard April 28th, 29th, 30th.    Decided May 13th.*

Error to Oakland Circuit.

This was an action brought by defendant in error to recover damages from the Detroit and Milwaukee Railroad Company, for injuries received by being run over by their cars at Holly.

DETROIT AND MILWAUKEE R. R. CO. v. VAN STEINBURG.

A verdict was rendered by the jury for plaintiff below, for $12,000.

The case was removed to this court by writ of error and bill of exceptions.

Numerous exceptions were taken on the trial to the admission of testimony, as well as the charges to the jury, the material portions of which are stated in the opinion.

*Geo. Jerome,* and *G. V. N. Lothrop,* for plaintiff in error.

1. Testimony concerning the rate of speed of a railroad engine with reference to the relation of speed to the distances within which trains can be stopped must proceed from experts. This is a matter of special knowledge. No one can give an opinion worth anything unless by practical experience or observation. Mere presence on a train will not give the instruction. There must be an opportunity to know all the elements that enter into it — speed, force applied, weight of train, grade, etc. Some experience of this kind is necessary to enable the witness to speak at all, and the value of the opinion will depend on the extent of training that the expert has had.—*1 Greenl. Ev. 440; 12 Mich. 27; 14 Id. 489; 17 Ill. 582; 2 N. Y. 515; 8 Bosw. 345; 24 How. R. 172; 6 Abb. Dig. 226, § 15.*

2. The plaintiff was allowed to put before the jury evidence of what the crowd, or some member of the crowd assembled near the depot, near the time of the accident, said, as to the ringing of the engine bell when the train came in.

This was inadmissible. It was hearsay testimony.—*1 Greenl. Ev. § 124; 15 Johns. 495.*

3. Upon the point of the degree of care necessary to be used in a case like this, plaintiffs in error cited.—*5 Barb. 337; 13 Id. 9; 25 Id. 600; 27 Id. 221; 32 Id. 147; 33 Id. 429; 11 Id. 112; 37 Id. 516; 4 Allen, 268; 8 Id. 227; 1 Id. 187; 7 Id. 207; S. C. 3 Id. 18; 8 Id. 137; 5 Id. 7; 28 Ill. 299, 523; 18 N. Y. 422; 29 Id. 315; 20 Id. 76; 22 Id. 209;*

DETROIT AND MILWAUKEE R. R. CO. v. VAN STEINBURG.

*S. C. 4 Id. 349; 35 Id. 9; 49 Penn. 60; 12 Cush. 488; 5 Denio, 255; 2 Mich. 263; 10 Gray, 274.*

*M. E. Crofoot,* and *A. B. Maynard,* for defendant in error.

1.  A witness for plaintiff was asked whether his attention, at the time of the alleged injury, was called to the fact, whether or not a bell was rung or a whistle sounded.

This was perfectly competent.

It is not in principle unlike the rule permitting witnesses' recollection to be refreshed by themselves recurring to memoranda, or by permitting others to call attention to circumstances to aid or refresh the recollection of the witness.—*2 Phil. Ev. (4th Am. Ed.), 916; Id. 917 to 928 and notes; 5 Greenlf. Ev. 436; 12 Mich. 459, 486.*

2.  Two witnesses, Ellsworth and Mitchell—both of them old mail agents—testified about how fast the train should have been running to stop at its usual place.

The testimony showed that they were expert enough for that purpose. Anybody who had seen trains come into stations and stop, and had given any attention to it, could as well tell how fast ordinarily, a train is running at such times to stop within fifty or one hundred feet, as any elaborately learned expert.

But the witnesses had some knowledge of the matters sought by the inquiry: how fast a train should be running, coming into a station, to stop within a given distance—knowledge founded upon actual observation, the only or at least the best means of knowledge; and although they might not have been as profound as some others upon the subject, still the evidence was admissible. Its weight was for the jury to consider.—*12 Mich. 27.*

3.  Upon the point whether the court or the jury is to determine as to the ordinary care of the plaintiff, defendant in error cited the following cases:—*1 Man. and Gran. 568; 39 Eng. Com. Law, 559, 563, 682; 11 East, 60; 3 Man. and Gran. 59; 42 Eng. Com. Law, 40; 1 Adolph. and Ellis, 29;*

DETROIT AND MILWAUKEE R. R. Co. *v.* VAN STEINBURG.

*41 Eng. Com. Law, 422; 21 Wend. 617; 10 Mees. and Wels. 545; 12 Ad. and El. 439; 64 Eng. Com. Law, 437; House of Lords, 1853; 28 Law and Eq. 48; Common Bench, 185; 2 Com. B. N. S. ( 2 J. S. N. S.) 739; 89 Eng. C. L. Id. Exchequer Chamber, 1858; 5 Com. B. N. S. 573, 594; ( 5 J. S. N. S.) 573; 94 Eng. C. L; Common Bench, 1860; 8 Com. B. N. S. 525; 8 J. Scott, \N. S; 89 Eng. Com. Law, 525; 16 Com. B. N. S. 179; Same case, 30 Law and Eq. 473; Common Bench, 1865; 18 C. B. N. S. ( 18 J. S. N. S.) 225; ( 114 Eng. C. L.) Common Bench, 1865; 18 Com. B. N. S. 584; ( 18 J. S. N. S.) ( 114 Eng. Com. Law, 584;) Queen's Bench, 1866; 1 Q. B. L. 1865–66, 228, 281, 285, 287; Common Bench, 1865; 19 Com. B. N. N. S. 183; 115 Eng. C. Law, 183; 3 Hurl. and Colt. 534, cited in 115 Eng: Com. Law, 118; 2 Mees. and Wells. 770; ( Exchequer ) 3 Id. 244; ( Exchequer ), 1865; 16 Penn. 463; 21 Id. 203; 30 Id. 454; 31 Id. 372; 32 Id. 292; 35 Id. 60; 40 Id. 399; 44 Id. 375, 60; 44 Penn. 371, 347, 380; ( S. C.) A. L. R. March, 1868, 277; 21 Pick. 176; 21 Id. 254; 7 Met. 274; 2 Cush. 539; 10 Id. 562; 6 Gray, 64; 8 Id. 45; 11 Gray, 157; 1 Allen, 187; 3 Id. 18; 7 Id. 207; 3 Id. 176; 4 Id. 283; 6 Id. 87; 8 Id. 227, 234; 9 Id. 401, 557; 24 Vt. 487; 28 Id. 180; 5 Cal. 360; 18 Id. 351; 13 Geo. 68; 18 Id. 679; 9 Rich. 84; 19 Conn. 566; 23 Id. 101, 339; 27 Id. 393; 3 Ohio, 172; 6 Clarke, ( Ia. ) 443; 21 Id. 102 103; 9 Wis. 202; 18 Id. 74, 175; 19 Id. 489; 20· Ill. 478; 28 Id. 370, 424, 483; 7 Ind. 474; 9 Id. 397; 26 Ind. 76; 4 Zabris. N. J. 268, 284; 5 Dutch. 544; 5 Barb. 337; 8 Id. 368; 13 Id. 9; 3 E. D. Smith, 103; ( Com. P.) 14 N. Y. 310; 5 Duer 21, ( Superior Ct. ) 20 N. Y. 65; 6 Duer, 382; 18 N. Y. 492; 2 Bos. 374; 7 Id. 329; 35 N. Y. 516; 18 Id. 248, 422; 21 Barb. 339; 25 Id. 609; 27 Id. 528, 222; 20 N. Y. 232; 31 Barb. 385; 26 How. 32; 32 N. Y. 597; 32 Barb. 144; 18 How. Pr. 427; 32 Barb. 165; 23 How. Pr. 166; 33 Id. 503; 24 N. Y. 430; 29 Id. 315; 36 Barb. 230; 2 Robt. 356; 3 Id. 25; 32 Barb. 159; 24 How. Pr. 97; 32 Id. 262; 35 N. Y. 9; 36 Id. 39, 132.*

COOLEY CH. J.

The action in the court below was brought by Van Steinburgh to recover of the railroad company for injury done him by one of their engines at Holly station, on September 15, 1865. The plaintiff, it appears, was a hotel keeper at that place. The track passed between his house and the depot, and only about thirty feet therefrom. He heard the whistle of an approaching train when it called the station; started to cross over the track to the depot; was caught by the engine as it came up, and had one foot taken off, and the toe of another. The defendants insisted that the injury was attributable to his own carelessness; while he, on his part, claimed that the defendants were negligent and he was not.

Thirty-eight exceptions appear in the record, a number of which were not insisted upon on the argument, and will not be noticed here. Four of the others were assigned to rulings of the Circuit Judge, allowing persons not shown to be experts to testify to the rate of speed the engine was running at the time the accident occurred. Each of these persons stood at the time upon the ground or the platform near the place of the accident, and saw the train pass. Two of them had been a good deal accustomed to railroad traveling; the others were not shown to have had any special opportunity to judge of the speed of passing trains beyond that possessed by people generally.

The point to which the attention of the witnesses was directed was the speed of a passing object. The motion of the train was to be compared to the motion of any other moving thing, with a view to obtaining the judgment of the witness as to its velocity. No question of science was involved, beyond what would have been, had the passing object been a man or a horse. It was not, therefore, a question for experts. Any intelligent man who had been accustomed to observe moving objects, would be able to express an opinion of some value upon it, the first time he

ever saw a train in motion. The opinion might not be so accurate and reliable as that of one who had been accustomed to observe, with time piece in hand, the motion of an object of such size and momentum; but this would only go to the weight of the testimony, and not to its admissibility. Any man possessing a knowledge of time and of distances would be competent to express an opinion upon the subject. The case of *Sisson v. Cleveland and Toledo R. R. Co. 14 Mich. 489,* which was urged upon us as in point, has no analogy. The question there related to the capacity of an engine, about which none but an expert could be supposed to have knowledge; but this relates to matter of common observation.

In order to establish the negligence of the defendants, the plaintiff sought to show that the velocity at which the train was moving at the time the accident occurred, was so great that it would have carried it considerably by the usual place of stopping; and having put in evidence to show the rate of speed, a witness was then asked, "At what rate of speed should the train have been running to stop at the usual stopping place?" This question was objected to, because the witness was not shown to be an expert. This question evidently stands upon a different ground from the last, and can only be answered by a person of experience in the running of trains and in checking their speed. I am inclined to think, however, that the witness had given evidence which showed that he had had such opportunities as entitled him to speak as an expert. He had been traveling as a mail agent regularly for two years on the cars, and unless greatly defective in observation or capacity, ought to be able to express an intelligent opinion. To constitute an expert, it can not be necessary that one should be connected with the management of the train. If he is in position to witness the result of the management, and to observe the effect when the means of checking the train are applied, he may be as competent to express a satisfactory opinion as

17 Mich. — h.

the conductor, the brakeman, or, possibly, even the engineer. If there was any error in this ruling, or in the subsequent admission of similar evidence from another witness, whose opportunities for observation had been similar, it was in allowing the witnesses to answer the question before they had testified that their observation had been such as to entitle them to express opinions.

The plaintiff claimed the defendants did not ring their bell when approaching the station at the time of the accident; and this he insisted was negligence. Holly station is the point where the Flint and Holly railroad connects with that of the defendants; and the train by which plaintiff was injured was accustomed to switch off from its own road when near the station, and run up to the depot on the line of the Flint and Holly road, where it left cars to be taken by that company. The accident, therefore, was on the track of the last named road; and the plaintiff was allowed to prove, as having some bearing on the question of negligence, that the Flint and Holly company were in the habit of ringing their bell when running their trains over this part of their track. I have not been able to discover any sufficient reason for the admission of this evidence. It was suggested, on the argument, that, as the defendants were using the track of the Flint and Holly road, the plaintiff had a right to suppose they were running according to the customs and employing the signals of that company; and that the testimony was material as bearing upon the question of the plaintiff's negligence. It does not strike me, however, that the defendants were in any such position as they might be if they should run one of their trains over the road of another company. The track, at the point in question, only stood in the place of a side track to these defendants, upon which they run their trains to leave cars, and then passed off again upon their own track. The plaintiff knew the manner of their using it, and could not be supposed, therefore, to have governed

his actions with exclusive reference to the practice of the other company. It was also suggested that the evidence would have had some tendency to establish a general practice among railroad companies, which must be presumed to have been established, because necessary to prevent similar accidents; but no further attempt was made to prove any such general practice, and as the custom of only one company could have no tendency to establish it, I think the judge erred in admitting the evidence, especially as there is no claim that it was offered for any such purpose.

I also think the judge erred in allowing witnesses to testify to what was said by by-standers, immediately after the accident, about the bell not having been rung when the train approached the station.

It is undoubtedly competent, when a disputed fact is in question, to allow a witness to state any circumstance occurring at the same time, and which had a tendency to fix the occurrence upon his mind. The credit to be given to his recollection, will greatly depend upon the reasons which induced him to give particular attention to the facts concerning which he testifies. "The value of his recollection would depend entirely upon the degree of attention with which he observed the facts, and the reasons which operated upon his mind to excite that attention, and fix the facts in his memory."—*Per Christiancy, J.* in *Angell v. Rosenbury, 12 Mich. 257.* And I think, also, that if immediately after an occurrence, an eye witness has the subject specially brought to his attention in such a manner as particularly to impress it upon his memory, while it is still fresh and vivid, it is competent for him, when the facts become material, in legal investigations, to state the circumstance then occurring, and which tended to make his recollection more distinct and particular than it would otherwise have been. If the attention of the witness is specially called to the subject while the transaction is going on, he will be more likely to observe with attention, as well

as to recollect what he has seen; and, though anything which should attract his attention to the circumstances immediately after they had occurred, would not be so important, inasmuch as it could not affect the attention with which the facts would be observed, yet, as affecting the credibility of the 'witness' recollection, it might still have an important bearing.

This rule, however, would be a very dangerous. one, if, under cover of it, hearsay testimony could be brought before the jury, as it seems to me, it was in this case. Thus, when the witness, S. H. Coon was on the stand, he was asked the question, which I think entirely proper, "Was your attention at the time called to the fact, whether or not the train came in without sounding the bell or whistle?" To which his reply was: "It was talked of at the time, that the train came in without ringing the bell." And, in reply to a similar question, George W. Coon says: "My attention was called to it; I heard some one say it was not rung." Each of these replies was objected to, and in each case it is evident that the witness, instead of confining himself to a proper answer to the question, was allowed to bring before the jury the statements of persons, who were not only not sworn, but whose names, even, were not known. It was impossible that such statements should be without influence upon the jury; especially, as what these unknown persons are reported to have said had a tendency to support a portion of the sworn testimony against another portion upon a disputed point. And, as this testimony from the Coons was incompetent and inadmissible for any purpose, I do not think the error committed in admitting it was cured by the instruction of the judge to the jury, that they ought not to consider it as proof of a substantive fact, as it was only proper as showing that the attention of witnesses was called to the ringing, or not ringing of the bell.

The Circuit Judge, I think, was right in ruling out the question put to the plaintiff, on cross-examination, as to

what he knew about a statement of some sort, which counsel held in his hand, and which was in no manner brought home, either to the plaintiff, or to anybody else. He was also right in rejecting a question put to the witness, S. H. Coon, after he had testified to having made a statement of the facts in writing: "Would you recognize a copy of the statement, if it was read over to you?" I know of no rule of cross-examination which will sanction such questions.

I think the judge erred, however, in restricting the cross-examination of S. H. Coon, as he did in other particulars. On his direct examination, this witness had testified that he went to the depot the morning of the accident with his carriage. It stood north of the west end of the depot platform, backed up to it at the northwest corner. He heard the whistle east of the mile post, but the train was not in sight; he stood in his carriage and was looking for the train. It came in sight just east of the switch. And he then narrated the subsequent facts, including the injury to the plaintiff. On his cross-examination he was asked, "From the hotel, what obstructions are there to prevent seeing the train as well as from the platform?" This question was ruled out, as not proper cross-examination within the rule laid down in *People v. Horton*, *4 Mich.* 67.

The case of *People v. Horton*, we think, is overruled, so far as it has any bearing upon the present question, by the cases of *Chandler v. Allison*, *10 Mich.* 477; *Dann v. Cudney* *13 Mich.* 239 and *Thompson v. Richards*, *14 Mich.* 172. The case itself we have always regarded as a departure from the true rule of cross-examination, and it has had a tendency, greatly and unreasonably, to embarrass the elucidation of the truth by the sifting of witnesses ever since the case was decided. When a party places a witness upon the stand to testify to facts which tend to support his side of the issue involved, and questions him concerning such facts, it is the right of the opposite party, on cross-examination,

to go as fully into the subject as may be necessary to draw from the witness all he may know concerning the transaction about which he has testified, and to put before the jury any pertinent facts which will have a tendency to controvert the testimony which has been given by the witness in favor of the party calling him. A more restricted rule renders cross-examination in many cases nearly valueless, and enables a party, by careful questions to his witness, to give to the jury a one-sided and partial view of the facts within the knowledge of the witness, and effectually to preclude the opposite party from supplementing the witness' statement with the further facts within his knowledge concerning the same transaction, unless he shall make the witness his own, in which case he is supposed to vouch for him as credible, and has also less privilege of searching examination.

In the present case, the facts which the plaintiff sought to establish, were that he was injured, and that the negligence of the defendants was the proximate cause. Necessarily intermingled with this, however, was the question whether the plaintiff had not also been guilty of negligence which materially contributed to the injury; and this question was so involved in the examination of the plaintiff's witnesses, that it was impossible to keep it out of view for a moment. *Prima facie* one who walks in front of a train which he knows is coming, and is run over, is guilty of some want of prudence; and the plaintiff found it necessary in this case to put in evidence such facts concerning the management of the train by defendants as would tend to relieve him from this apparent liability to censure. The distance at which the train could be seen from the plaintiff's hotel, as well as from the depot platform, was an important fact bearing upon this issue; and as such, the defendants were entitled to inquire into it of any witness who had been put upon the stand to testify to the negligence of the persons in charge of their train.

I do not perceive any particular relevancy in the question to the witness Briscoe as to whether the engineer Van Wormer was above or below the general average. Some testimony was given on that point, but on what ground is not perceived. It was not charged that he was incompetent, but that he was sometimes reckless; and the proposed question seems foreign to the proper inquiry.

I do not think there was any error, in the admission of testimony, from the witness Baker to show that the train could not be seen from the depot platform more than fifty or sixty rods. The testimony was offered as rebutting to that given by the defendants; but if it was not strictly so, the judge had a right, in his discretion, to admit it; and having this right, I think we must treat the evidence as properly admitted, notwithstanding he may not have stated that he admitted it under his discretionary power. This is to be understood, if the evidence was not admissible on other grounds.

The testimony of the witness Haven, as to the effect of dysentery on the plaintiff, was irrelevant and should have been excluded. There was no evidence that this disease was induced by the injury.

I am inclined to think there was no error in law in admitting the evidence of the witness Springer that the engineer Van Wormer had run by the stations in some instances. This evidence would not have been admissible as evidence in chief to establish the negligence of the engineer on the occasion of the injury; but the defendants had put in evidence tending to establish the character of Van Wormer as an average engineer; and though the testimony was not very pointed or specific, the evident tendency and purpose of it was to show Van Wormer a suitable man for his place. If this evidence could have any relevancy in a case where the question was one of negligence on a particular occasion only, then I think this of Springer was admissible as rebutting; but for no other purpose.

The exclusion of Kirkluff's evidence was clearly a matter resting in the discretion of the Circuit Judge. The witness was not produced until after the case had been closed, and there was not the least ground for insisting upon his examination as a matter of right. This disposes of all the exceptions which were insisted upon in the argument, except those which were taken to the charge to the jury.

To understand the requests to charge which were made on the part of the defendants, and to be able to judge of the propriety of their refusal, it will be necessary to state a portion of the plaintiff's evidence. The plaintiff's own account of the transaction was as follows:

"I live in Holly, and in 1865 kept the Holly Exchange, in company with my brother-in-law, Henry Springer. I commenced keeping it about September 15, 1865. The defendants had run trains of cars through the village of Holly ten or twelve years; their depot is south and west of the hotel, and their track is on the south side of the depot, and upon which track all the trains of the road are run, and stopped in front of their depot; and the track of the Flint and Holly Railroad Company is on the north and east side of the depot, and between the depot and the hotel. In September, 1865, defendants' engines and trains brought in the Flint and Holly travel, and, at Holly, run from junction on the Flint and Holly Railroad track to front of the depot on the northeast side, between our hotel and depot, and stopped in front of the waiting room, then left the coaches and moved on with their engines and switched off; and the Flint and Holly Railroad Company's engines then backed up, hitched on to the coaches and took them to Flint. The junction of the two roads is southeast of the depot, and the trains stopped in front of the waiting room at the depot for passengers to get on and off, and to make the changes of engines. There was a platform between the depot and the track, extending close up to the track. The

trains always stopped at the depot. I had always been accustomed to go to the depot from my hotel across the street, running to the railroad; it was the way of public travel. The passage-way from the hotel to the depot was across a street running down to defendant's track. On the morning of September 15, 1865, I was in the hotel; I had been putting down a carpet; came out and went down town, and got shaved; went into post office and came back; went into hotel with the mail; had been gone down town some time; just after I went in I heard a whistle, and said to my brother-in-law, Henry Springer, that a train was coming, and that he had better go over; Springer had on his slippers, and told me to go. I did not know whether it was an eastern or a western train. I started to go to the train; passed out of a door on the south side of the hotel nearest to the billiard room; met Mr. Charles Donaldson, another hotel keeper, and asked him if he was going to the train; Donaldson replied that he was; when I got out beyond the corner of the billiard room of my hotel, I looked to see if I could see a train from the east, and saw none. Donaldson and I passed on towards the depot, Donaldson being a step or two in advance, and to my left. When I got near the railroad track, Donaldson sprang across the track, and just as I put my left foot over the first rail, some one screamed to me. I turned my head towards the right, and at that instant the cow-catcher struck me above the ankle and threw me on the cow-catcher. I threw myself back towards the hotel, kicked to get loose and was caught by my right foot and the great toe of that foot taken off; was picked up and carried into the hotel." The plaintiff here explained a map of the premises, and a red line upon it indicating his course in going from the hotel to the depot, and proceeded: "My course to the track was a little further north than the red line on the map, and a little past the center of the depot and the center of the street. I was a little past the center of the

street, and in the public road, when I was struck. My left leg was cut off, and after I was struck I was not conscious for a day or two. There was no train in sight when the whistle blew; a train could be seen fifty or sixty rods after a person had got out far enough to see past the billiard room. When I looked to see if I could see the train, I was near the corner of the post on the hotel stoop. It was over a half mile from the depot to the mile post on defendant's track, east. I heard nothing of the train after the first whistle until it struck me. Some mornings the train makes more noise than at others; some mornings making little noise; and trains run more quietly on the Flint and Holly track than on the defendant's; the former track being new and smooth."

The plaintiff gave further evidence tending to show that at the time of the injury the train was moving at the rate of ten miles an hour, or faster; that the engine was within about fifty feet of the usual place of stopping, and at this rate could not have been checked at that place. He also put in evidence tending to prove that no bell was rung or alarm sounded, after the whistle heard by him, until he was struck. It was also stated by some of the witnesses that a third person, who was spoken of as a conductor, immediately preceded the plaintiff and Donaldson in crossing from the hotel to the depot, and it would seem from appearances that neither of the three saw the train until the instant it was upon the plaintiff; Donnelly the same instant springing out of its reach.

Strong evidence was given on the part of the defendants tending to disprove the high rate of speed testified to by plaintiff's witnesses, and to show that the bell was rung as the engine approached the station. And it would appear that as the plaintiff stepped upon the track he would have been almost directly fronting a train coming from the direction of Flint, and could have seen it for a considerable distance, if it had been coming that way.

Upon this evidence the counsel for the defendants requested the court to charge the jury:

*First:* That the conduct of the plaintiff, by leaving the hotel, with knowledge that a train was coming, and walking upon the track in front of the train, which could be seen for fifty or sixty rods, is negligence, and he cannot recover.

*Second:* If the jury believe that the plaintiff heard the whistle announcing the approach of the train, and knew that any train was arriving, and that it could be seen for fifty or sixty rods during his walk from the hotel, and he went upon the track, this is such negligence as will prohibit his recovery.

*Third:* That if the defendant's employees were negligent in omitting to ring the bell, and also in approaching the station too rapidly, if plaintiff heard the whistle announcing the approach of the train, and from negligence and inattention walked upon the track, he cannot recover.

*Fourth:* That if the plaintiff heard the whistle, and knew the time when this train was due, it is absence of ordinary care for the plaintiff to walk upon the track in front of the engine, and he cannot recover.

Before noticing these requests, the Circuit Judge instructed the jury, that the first proposition for them to consider, was, whether the defendant, in running its engine and train, upon the occasion in question, immediately preceding and at the time of the accident complained of, was exercising ordinary care and diligence, and if the jury should find that the defendant was not guilty of a want of ordinary care and diligence, the plaintiff could not recover under any circumstances whatever; but, that if the jury should find that the defendant did not use ordinary care and diligence, under all the circumstances, then the next question for them to consider was the conduct of the plaintiff in the occurrences that immediately preceded the injury complained of, and at the time it happened, and that if

they should find that the plaintiff under all the circumstances, did not use reasonable and ordinary care and diligence, and such conduct contributed to the injury, he could not recover, however negligent the defendant might have been; that to entitle the plaintiff to recover, the jury must find that the plaintiff was not, and the defendant was guilty of a want of ordinary care and diligence. After instructing the jury as to what constituted ordinary care and diligence, the judge further charged them, that, inasmuch as the question of negligence was based upon facts disclosed by the proofs, about which there was dispute, and concerning which there was conflicting evidence, it was the peculiar and exclusive province of the jury to determine those facts, and upon their finding of facts, to determine the question of negligence. And, coming to the particular requests above set forth, the Judge told the jury that he could not instruct them as requested; that he thought the questions of fact involved in the case were proper for the consideration of the jury, and that the court could not assume what the facts were, nor that they were or were not correctly stated in those propositions, or that they were *all* the facts proven upon which the question of negligence depended: that these were all matters for the consideration of the jury, under the rules of law laid down for them by the court. But the judge did then state to the jury, in reference to the said four requests, that if the plaintiff walked upon the track, with notice of the approach of a train upon that track, whether by signals or by seeing the train approaching, it is such negligence on his part as will prevent his recovery. And, also, that if the jury shall find that the defendant's employees were negligent in omitting to ring the bell, and also in approaching the station too rapidly, yet if the plaintiff knew that the train was approaching, and to come upon that track, or had good reason to suppose that it was, and from negligence or inattention walked upon the track and was injured, it was negligence on his part and

he could not recover: for the object in requiring signals to be given of an approaching train, is to bring home to the wayfarer notice of its approach, and if he have that notice or knowledge, and from negligence or inattention, walk upon the track, and is injured, he cannot, under the law, recover.

From this statement of the instructions to the jury, it must be evident, I think, that if the question of the plaintiff's negligence was one to be left to the jury at all, it was very fairly submitted to them by the judge; or, at least, that there was nothing in his charge of which the defendants could justly complain. Without entering upon the debatable ground of the degree of negligence on the part of the plaintiff which should exonerate the defendants from liability, or on the part of the defendants which might justly subject them to responsibility, notwithstanding the plaintiff's want of prudence, he gave them to understand that a want of reasonable and ordinary care and diligence on the part of the plaintiff should entirely excuse the defendants from liability for any degree of negligence, however great, of which they may have been guilty. The disputed point in the present case is, whether there had not been shown by the evidence such a case of negligence on the part of the plaintiff as left nothing to be passed upon by the jury, but required the court to instruct them, as matter of law, that the plaintiff could not recover.

In determining this question, we must look at the case as it appears from the plaintiff's own testimony, unqualified by any which was offered on the part of the defendants, and must concede to him any thing which he could fairly claim upon that evidence. He had a right to ask the jury to believe the case as he presented it; and, however improbable some portions of his testimony may appear to us, we can not say that the jury might not have given it full credence. It is for them, and not for the court to compare and weigh the evidence. For the purposes of any positive

instructions which one party may demand upon the evidence, he must concede all that his opponent may claim from it. He must, therefore, concede in the present case that the train came in without sounding any other signal than the whistle which called the station; that it approached the station with a velocity which was unusual, and which would have carried it considerably beyond the usual place of stopping; that consequently it must have reached the place of the injury sooner than, and, perhaps, within half the time the plaintiff had any reason to expect, and that, in fact, others besides himself were surprised by its sudden arrival, and came near being run over and injured by it. All these facts might have been, and doubtless were urged upon the jury, as made out by the evidence, and the defendants must, therefore, claim that, admitting all these facts, the plaintiff is still shown to be guilty of such a want of ordinary care, as the law pronounces a bar to any recovery by him.

As a general rule, it can not be doubted that the question of negligence is a question of fact and not of law.— *Lynch v. Nurdin, 1 Q. B. 29; Cotton v. Wood, 8 C. B. N. S. 568; Carsley v. White, 21 Pick. 256; Bradley v. Boston and Maine R. R. 2 Cush. 539; Linfield v. Old Colony R. R. 10 Cush. 569; Rindge v. Inhabitants of Coleraine, 11 Gray, 157; Gahagan v. Boston and Lowell R. R. 1 Allen, 190; Housatonic R. R. v. Waterbury, 23 Conn. 101; Langhoff v. Milwaukee and Prairie du Chien R. R. 19 Wis. 497; Ernst v. Hudson River R. R. 35 N. Y. 9; Trow v. Vermont Central R. R. 24 Vt. 497; Vinton v. Schwab, 32 Id. 612; North Pennsylvania R. R. v. Heileman, 49 Penn. 63; Pennsylvania R. R. v. Ogier, 35 Id. 71; Central R. R. v. Moore, 4 Zab. 832; Macon and Western R. R. v. Davis, 13 Ga. 68; Same case, 18 Id. 683; Rusch v. Davenport, 6 Iowa, 443; Ind. and Cin. R. R. 9 Ind. 397; Renwick v. N. Y. Central R. R. 36 N. Y. 132.* Negligence, as I understand it, consists in a want of that reasonable care which would be exercised

by a person of ordinary prudence under all the existing circumstances, in view of the probable danger of injury.   The injury is, therefore, one which must take into consideration all these circumstances, and it must measure the prudence of the party's conduct by a standard of behavior likely to have been adopted by other persons of common prudence. Moreover, if the danger depends at all upon the action of any other person under a given set of circumstances, the prudence of the party injured must be estimated in view of what he had a right to expect from such other person, and he is not to be considered blamable if the injury has resulted from the action of another which he could not reasonably have anticipated.   Thus the problem is complicated by the necessity of taking into account the two sets of circumstances affecting the conduct of different persons, and is only to be satisfactorily solved by the jury placing themselves in the position of the injured person, and examining those circumstances as they then presented themselves to him, and from that stand point judging whether he was guilty of negligence or not.   It is evident that such a problem can not usually be one upon which the law can pronounce a definite sentence, and that it must be left to the sifting and determination of a jury.

There are, nevertheless, cases in which it has been held proper for the court to take the question altogether away from the jury, and decide it as one of law.   It is generally held, and is, I think, the correct doctrine that it is incumbent on the plaintiff to show that the injury of which he complains was caused by the negligence of the defendant, and that it did not arise from his own negligence or want of skill.   He takes it upon himself to prove both; and he does not recover if he was negligent, because it can not be said that the defendants' negligence has caused an injury which would not have happened but for his own want of due care. — *Lane v. Crombie, 12 Pick. 176; Carsley v. White, 21 Id. 254; Lucas v. Taunton and New Bedford R. R. 6*

*Gray, 70; Warren v. Fitchburg R. R. 8 Allen, 230; Park
v. O'Brien, 23 Conn. 345; Reeves v. Delaware, Lackawanna
and W. R. R. 30 Penn. 454; Hummell v. Philadelphia and
Reading R. R. 44 Id. 375; Moore v. Central R. R. 4
Zab. 268.* — When, therefore, the plaintiff offers no evidence
that he was in the exercise of care, but, on the contrary,
the whole evidence on which his case rests shows that he
was wanting in due prudence, the court, it is held, may
rightfully instruct the jury, as a matter of law, that the
action can not be maintained. — *Cotton v. Wood, 8 C. B. N.
S. 568; Gahagan v. Boston and Lowell R. R. 1 Allen, 190;
Todd v. Old Colony R. R. 3 Id. 21; Wright v. Malden and
Melrose R. R. 4 Id. 283; Wilson v. Charlestown, 8 Id. 137;
Callahan v. Bean, 9 Id. 401; Trow v. Vermont Central R.
R. 24 Vt. 497; Briggs v. Taylor, 28 Id. 180; North Penn-
sylvania R. R. v. Heileman, 49 Penn. 63; Gruiron v. N. Y.
and Harlem R. R. 3 Rob. 25.*

The case, however, must be a very clear one which
would justify the court in taking upon itself this responsi-
bility. For when the judge decides that a want of due
care is not shown, he necessarily fixes in his own mind the
standard of ordinary prudence, and, measuring the plain-
tiff's conduct by that, turns him out of court upon his
opinion of what a reasonably prudent man ought to have
done under the circumstances. ' He thus makes his own
opinion of what would be generally regarded as prudence a
definite rule of law. It is quite possible that if the same
question of prudence were submitted to a jury collected
from the different occupations of society, and perhaps bet-
ter competent to judge of the common opinion, he might
find them differing with him as to the ordinary standard
of proper care. The next judge trying a similar case may
also be of a different opinion, and, because the case is not
clear, hold that to be a question of fact which the first has
ruled to be one of law. Indeed, I think the cases are not
so numerous as has been sometimes supposed in which a

judge could feel at liberty to take the question of the plaintiff's negligence away from the jury. The judge, it is said in one case, is not bound to submit to a jury the propriety of a particular course, when it is perfectly notorious that all prudent men conduct their own affairs differently. The uniformity of the conduct of business men becomes a rule of law.

But while there is any uncertainty, it remains a matter of fact for the consideration of the jury.—*Briggs v. Taylor, 28 Vt. 183.* The difficulty in these cases of negligent injuries is, that it very seldom happens that injuries are repeated under the same circumstances; and, therefore, no common standard of conduct by prudent men becomes fixed or known. In *North Pennsylvania R. R. v. Heileman, 49 Penn. 63,* it is said: "That what constitutes negligence in a particular case is generally a question for the jury and not for the court is undoubtedly true, because negligence is want of ordinary care. To determine whether there has been any, involves, therefore, two inquiries: *First,* What would have been ordinary care under the circumstances; and *Second,* Whether the conduct of the person charged with negligence came up to that standard. In most cases the standard is variable, and it must be found by a jury. But when the standard is fixed, when the measure of the duty is defined by the law, entire omission to perform it is negligence. In such a case the jury have but one of these inquiries to make. They have only to find whether he, upon whom the duty rests, has performed it. If he has not, the law fixes the character of his failure and pronounces it negligence." In *Meesel v. Lynn and Boston R. R. 8 Allen, 234,* the court declined to instruct the jury that riding upon the outside platform of a horse railroad car was such a want of ordinary care as would prevent a recovery for an injury sustained by being thrown therefrom. "There is no such general knowledge," says the judge delivering the opinion, "as enables the court to

17 MICH.—1.

say that the plaintiff did not use due care.   On the contrary, it is well known that the highest speed of a horse railroad car is very moderate, and the driver easily controls it, and stops the car by means of his voice, his reins and his brake.   In turning around an angle, from one street to another, passengers are not required to expect that he will drive at a rapid rate; but, on the contrary, might reasonably expect a careful driver to slacken his speed."   In other words, the passengers had a right to govern their action by what they might reasonably expect would be that of the driver; and this presented a proper question to be submitted to the jury.   See also *Isbell v. N. Y. and N. H. R. R. 27 Conn. 393.*   This question was very fully and carefully considered by the Supreme Court of Connecticut in *Beers v. Housatonic R. R. 19 Conn. 566,* and a rule was laid down, which has since been followed in that state, and is very succinctly stated in *Park v. O'Brien, 23 Conn. 347,* as follows: "The question as to the existence of negligence, or a want of ordinary care, is one of a complex character.   The inquiry not only as to its existence, but whether it contributed with negligence on the part of another to produce a particular effect, is much more complicated.   As to both, they present, from their very nature, a question, not of law but of fact, depending on the peculiar circumstances of each case, which circumstances are only evidential of the principal fact—that of negligence or its effects—and are to be compared and weighed by the jury, the tribunal whose province it is to find facts, not by any artificial rules, but by the ordinary principles of reasoning; and such principal fact must be found by them, before the court can take cognizance of it, and pronounce upon its legal effect."

It is a mistake, therefore, to say, as is sometimes said, that when the facts are undisputed the question of negligence is necessarily one of law.   This is generally true only of that class of cases where a party has failed in the performance of a clear legal duty.   When the question arises

upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence can not be determined until one or the other of those conclusions has been drawn by the jury. The inferences to be drawn from the evidence must either be certain and incontrovertible, or they can not be decided upon by the court. Negligence can not be conclusively established by a state of facts upon which fair minded men may well differ. In *Ireland v. Oswego R. R. Co. 13 N. Y. 533*, Judge *Johnson*, speaking upon this subject, says: "The fact of negligence is very seldom established, by such direct and positive evidence that it can be taken from the consideration of the jury and pronounced upon as matter of law. On the contrary, it is almost always to be deduced as an inference of fact, from several facts and circumstances disclosed by the testimony, after their connection and relation to the matter in issue have been traced, and their force and weight considered. In such cases the inference can not be made without the intervention of a jury, although all the witnesses agree in their statements, or there be but one statement which is consistent throughout. Presumptions of fact, from their very nature, are not strictly objects of legal science, like presumptions of law. That the care exercised by the plaintiff at the time of the injury, and the negligence of the defendant, were both questions for the jury to determine, can not admit of any doubt."— See also *Oldfield v. N. Y. and Harlem R. R. 14 N. Y. 310; Ernst v. Hudson River R. R. 35 Id. 38, 40, 47; Langhoff v. Milwaukee and Prairie du Chien R. R. 19 Wis. 497; Gahagan v. Boston and Lowell R. R. 1 Allen, 190; Vinton v. Schwab, 32 Vt. 612; Pennsylvania R. R. v. Ogier, 35 Penn. 71.*

Applying the principle of these cases to the one now before the court, I think the refusal of the judge to give the instructions prayed for was correct, and that the charge as given was just towards the defendants. It certainly can not be said that the plaintiff, on any view of the evidence,

observed the highest degree of prudence in his conduct. He stepped upon a track on which he knew a train was approaching, without turning to see how near it was, and the injury has resulted in consequence. Thus stated, the fact would appear to be gross negligence, if not utter recklessness. But there are other circumstances to be taken into the account before definite judgment can be pronounced upon the character of the act. The plaintiff heard the whistle half a mile off. He knew he had the time which would be required for the train to pass over that distance in which to cross over to the depot, a distance of less than a hundred feet. He also knew that all trains coming on this track stopped at the depot, and that they checked their speed and approached it slowly. He also had some reason to expect the ringing of a bell. But whether a bell was rung or not, it may well be claimed that he had abundant reason to believe there was ample time to cross the track, before the train, in the ordinary course, could possibly arrive, even though he walked along leisurely, as he must have done. He looked for the train, indeed, as he came out of his hotel, but he had less than the usual occasion for looking, when he knew about how far off the train was, and that, relying upon the ordinary mode of management, as he had a right to, he could not be in danger from it in passing over. And if we are to believe his evidence, he was entirely correct in his calculations, and it was only because the train came up at a speed twice as great as he had any right to anticipate, that he found himself in danger. He may claim, therefore, that he was not guilty of a want of ordinary care and prudence, because the ordinary condition of things, which was what he was to look for, would not have made his position dangerous. The plaintiff's case is, that the extraordinary and unprecedented speed of the train was what put him in peril; and, if the case, as made by him, should stand unshaken by other evidence, there would be in this position so much of plausibility, that I do not see how a judge could set aside a

verdict in accordance, as without evidence to support it. If this be so, neither could he take the case away from the jury by directing them to find a verdict for the defendants.

The errors in the record, which have been pointed out, make it necessary to reverse the judgment and order a new trial. The plaintiffs in error will recover costs in this court, and the costs in the court below will abide the result.

GRAVES J. concurred.

CAMPBELL J.

I concur in the result and in most of the conclusions of my brethren, but upon some points my views are not entirely in conformity with them.

While persons acting as mail agents have it in their power, in most cases, to devote more or less observation to the running and stopping of cars, there is nothing in their duties requiring it, and I do not think it can be assumed without proof that they have done so. They are not chosen for mechanical skill, nor entrusted with duties connected with the management of trains. It is not doubted that the estimate requisite to determine within what space a particular train can be stopped, when running at different rates, is a question of skill requiring the opinion of experts. There are few nicer questions in railroad science and practice, and the result depends upon so many different elements of momentum, grade, condition of track, and the number and power of brakes, as to demand considerable observation and experience. I think before the witnesses were allowed to give opinions, a foundation should have been laid, by showing that they had been accustomed to observe these matters, and had given them some attention. The objection was made early enough to permit of preliminary questioning, and I think it should have been required.

So far as that evidence is concerned, which was introduced to show a frequent or habitual carelessness, in Van

Wormer, in passing stations, I concur in holding it suffi-
ciently general to answer general proof of character.  But
so far as it was aimed at particular instances of negligence,
I think it was inadmissible.    The only purpose for which
evidence of his character was receivable, was to show whether
or not the defendants below were at fault in keeping him
in their employment; and proof of single acts of negligence
is improper;  *first,* Because no one can be supposed pre-
pared to meet that sort of proof, when not involved in the
issues to be tried; and, *second,* Because single acts of
negligence, unless known to his employers, could not re-
quire them to dismiss or censure him,   And, it is not
claimed by any one that negligence on one occasion can be
received to corroborate negligence on another.  These state-
ments were also improper, because fixing no time prior to
the accident.

I also think defendants below were entitled to the
rejected instructions.   So long as there is any possible
conflict as to whether his case is made out, the plaintiff
has a clear right to go to the jury.   But when upon his
own case, as presented by himself, and as assumed for this
purpose to be entirely true, he shows no cause of action,
the effect of the facts so admitted is a question of law, and
a party may require a charge as to their legal effect.   I
think this doctrine has never been questioned anywhere.
In *Pennsylvania Mining Company v. Brady, 16 Mich. 322,*
this doctrine was fully applied, and I do not understand
the general principle to admit of a doubt.  Where facts are
ambiguous of course it is for the jury to draw the infer-
ence.   But where they admit of but one construction, I
think in civil cases the rule is uniform that the court may
be required to instruct the jury upon their legal bearing.
And a special verdict finding them would entitle one
party or the other to judgment.

In this case the plaintiff told his own story, and testi-
fied that he knew a train was coming from some quarter,
that he knew the hours of the trains, that he left his house

on purpose to meet whatever train was approaching, that he was walking in such a direction as to see to the west, and saw no trains there, and that he only looked round once towards the east immediately after leaving his house, and then went on in the other direction, and as he came up to the track put his left foot over the rail without previously looking round, and at that very moment he was struck. His companion, who was a step or two ahead, leaped across in time, but plaintiff was then looking away from the track and did not see him do this. The train was visible for fifty or sixty rods from any point after he had left the corner of his house, which was thirty-two feet in a direct course from the track, while, by the path he took, it was over seventy. But in the oblique direction which he took, instead of having his side toward the approaching train, it was behind him, and could only be seen by turning round his head. He did not notice the time of day, and did not actually know what train was coming.

If any other facts in the case, or if any conceivable degree of negligence in the railroad company, set up by the plaintiff, could have so operated as to render such conduct anything but negligent in him, then the court was right in refusing to charge as requested. But it seems to me that, if under such circumstances, a person is not required to look upon a railroad track before attempting to cross it, there is no available precaution which the law can exact of a man, of sound mind, for his own preservation. Where risks are unusually dangerous in their consequences to life or limb, the same principle which holds the owners of such powerful machinery to be more than usually careful, renders it just as necessary for all other persons to use due care in approaching them. And absence of mind and inattention to danger can not fail to be negligence in any case where human safety is likely to be periled by them.

With these exceptions I concur in the opinion of the Chief Justice.

CHRISTIANCY J. did not sit.