WILLIAM SOMERVILLE AND CHARLES MULLEN V. MARY A. RICHARDS.

*False Imprisonment—Physician's Testimony—Error in Allowing Questions must be clearly shown to be Prejudicial—Admission of Evidence for Plaintiff after Defendant rests—Manner of Accused not Enough to Justify Arrest.*

In an action for false imprisonment a physician was asked his opinion of the effect of the arrest upon the plaintiff's health. It did not appear that he had any information as to what the circumstances were that attended the arrest. *Held*, that the objection to the question, if there was any, was avoided by a reply limited to the plaintiff's condition as he had ob-

served it before and after the time when the arrest took place. He expressed no opinion upon a hypothetical case, but only on facts falling under his own observation.

One who complains of being prejudiced by the admission of a mere question, must make a clear showing. The presumption is that the judge's discretion was fairly exercised. So *held* where complaint was made that a newspaper article not in proof had been put before the jury by means of questions whose apparent purpose was to ascertain whether the witness had furnished the items of which it was made up; as the article was not given in the record, it does not clearly appear whether too great latitude was allowed or not.

The Supreme Court will not review the discretion of the trial court in admitting competent evidence for the plaintiff after the defendant has rested, even though it is not rebutting.

The manner and appearance of a person on being accused of crime do not justify his arrest.

Error to Superior Court of Detroit. Submitted June 20. Decided October 9.

TRESPASS AND FALSE IMPRISONMENT. The facts are in the opinion.

*J. Logan Chipman* and *John G. Hawley* (on brief) for plaintiff in error. One cannot testify to an opinion except as to facts which he knows or which are submitted to him hypothetically. *White v. Bailey,* 10 Mich., 155; *Kempsey v. McGinniss,* 21 Mich., 123; *Underwood v. Waldron,* 33 Mich., 232. Inadmissible documentary matter cannot be introduced by examining the witness from it. *Gale v. People,* 26 Mich., 157. Mere suspicion of felony is probable cause for arrest. *Drennan v. People,* 10 Mich., 169.

*Levi Bishop* and *J. L. Vanderwarker* (on brief) for defendant in error, cited as to medical testimony, *Evans v. People,* 12 Mich., 27; 1 Greenl. Ev., § 440 *a;* as to competency of cross-examination as to whether witness had furnished items for the newspaper article, to discredit his testimony and show malice, *O'Donnell v. Segar,* 25 Mich., 367; *Comstock v. Smith,* 20 Mich., 338; *Wilson v. Wagar,* 26 Mich., 452; *D. & M. R. R. Co. v. Van Steinburg,* 17 Mich., 99. Complaint cannot be made of errors that do

not prejudice. *Richards v. Tozer,* 27 Mich., 451; *Beebe v. Knapp,* 28 Mich., 53. The cross-examination is presumed proper in the absence of a contrary showing, *Haynes v. Ledyard,* 33 Mich., 319; so are the remarks of the trial judge to the jury. *Cook v. Hopper,* 23 Mich., 511; *Welch v. Ware,* 32 Mich., 77. Evidence for the plaintiff can be received after defendant rests. *Hollister v. Brown,* 19 Mich., 163. It is proper to instruct the jury whether facts that are not disputed furnish probable cause. *Barron v. Mason,* 31 Vt., 189; *Bulkeley v. Keteltas,* 2 Seld., 384; *Ash v. Marlow,* 20 Ohio, 119; *Kidder v. Parkhurst,* 3 Allen, 393.

Cooley, C. J. The defendant in error brought suit against the plaintiffs in error for false imprisonment. It appeared, and was not disputed, that they arrested her at her home in the city of Detroit without any warrant, and took her to the police station, from which after a short detention she was discharged. The defense was that the arresting parties were members of the Metropolitan police force, and that they arrested the plaintiff on information and reasonable belief that a felony had been committed of which she was guilty. The plaintiff had judgment in the court below.

The first error complained of is that plaintiff's family physician was permitted to testify as an expert concerning matters the facts and circumstances of which were not known to him. It seems that the plaintiff was under the physician's care for a condition of debility and nervous prostration before the arrest, and that he saw her and continued to prescribe for her immediately after she informed him of the arrest. He testified that immediately after the arrest she was taken worse and kept her bed for some time. The following question was then allowed to be put under objection: "Can you explain how far her increase of indisposition after the 28th was referable to this arrest, supposing it to have taken place?" The answer was: "She was recovering previous to that time, and she used to come and see me at my office, and I found her a great deal worse. She had relapsed; her nervous system was affected a great

deal more, and I think it required about three weeks' treatment to improve her health to the condition it had been previous to that time."

The objection to the question was that it called for the opinion of the witness concerning the effect of the arrest, when it did not appear that he had information from the plaintiff or from any one what the circumstances attending the arrest were. It is a sufficient reply to the objection to say that the witness expressed an opinion upon nothing except the facts falling within his own observation. The answer was much less broad than the question, and was limited to the condition of the patient as observed by himself before and after the time when she was said to have been arrested. No opinion whatever was expressed upon a hypothetical case; so that if the question was objectionable —which we do not decide—the answer avoided the objection.

When one of the defendants was on the stand as a witness on his own behalf, a paragraph from a newspaper referring to the affair was produced, and on cross-examination he was asked several questions, the purpose of which appeared to be to ascertain whether he furnished to the reporter the information from which the paragraph was made up. The answers to the several questions were, either that he did not, or that he had no recollection on the subject. It is complained that by means of these questions the plaintiff was enabled to put before the jury a newspaper article not in proof, by incorporating in the questions the successive items of which the article was composed. We are inclined to think the latitude of inquiry permitted in these questions was somewhat unusual, but as the article itself is not given in the record, it would be presumptuous to express any definite opinion on that point. The supposition always is that discretion has been fairly exercised; and when one complains that he is prejudiced by a mere question, all the probabilities are so manifestly and decidedly against him, that he is called upon to make his showing in the clearest and most satisfactory manner. In this

case the record makes no showing not consistent with a fair and legitimate purpose to ascertain whether the defendant had furnished certain information to a newspaper, from which an article relating to the transaction had been made up; if there was an unfair attempt which the court failed to check, the fact is not sufficiently made apparent.

When the defendant Mullen was on the stand as a witness, he was asked on cross-examination this question: "Please look at rule number eleven. Did you go and look at the books Sunday morning?" This was objected to, but allowed, and the answer was that he went to the station but did not know as he looked at the books. We have no further explanation of this matter, and do not know what rule was referred to, or what books. Obviously we cannot assume that any person was injured by the question or by the answer.

The supposed felony of which the plaintiff appears to have been suspected was a felonious assault upon, and perhaps murder of one Jenny Wilson at the plaintiff's house. After the defense had introduced their testimony, plaintiff was allowed to give evidence of what had taken place at her house at the time Jenny Wilson was supposed to have been maltreated there. This was objected to as not rebutting; and the ruling admitting it is now relied upon as error. But we have frequently decided that we would not attempt to control the discretion of the trial court in admitting competent evidence for the plaintiff after the defendant had rested, even though it was not properly rebutting. *Detroit etc. R. R. Co. v. Van Steinburg*, 17 Mich., 99; *Danielson v. Dyckman*, 26 Mich., 169, 170. It was not objected that the evidence in question would have been inadmissible as a part of the plaintiff's case.

The ruling chiefly relied upon as error appears to be that the court held as matter of law the defendants were not justified in making the arrest. This renders it necessary to look into the facts upon which they relied for their justification; and they appear to have been these: that one

John Seely told the defendant Somerville that a Mrs. Wilson who lived next to the plaintiff had told him a long story about the abuse of Jane Wilson by plaintiff, and about some colored men going to plaintiff's house, and her belief that Jane Wilson was murdered there; that Somerville went to see plaintiff; "that she said all she knew about the matter was this: she heard some one rapping on the wall in the next room—Mrs. Wilson's house—and she went in there, and one woman was lying on the floor and one sitting on a chair or lounge, and she, Mrs. Wilson, brought Jenny Wilson into her part of the house, and then Jenny went away and was arrested for something, and then she came back with a colored man after a shawl; that the plaintiff then refused to go with Somerville on account of her health; that Somerville thought she was guilty from her actions, and did not believe it safe to give her an opportunity to escape, and that he insisted on taking her" to the station.

What there was in plaintiff's "actions" to lead the officer to believe she was guilty, unless it was her denial of all wrong, we are not informed, but as no other "actions" are mentioned, it is to be presumed that he refers to something in her appearance and manner when the charge was made against her. If those were sufficient grounds for an arrest, nobody would be safe; for the most innocent are often most confused when subjected to an atrocious charge. The substantial defense of the officers appears to have been this: that John Seely told them that Mrs. Wilson told him a horrible story; whereupon, without making any inquiry of Mrs. Wilson, who lived next door, they rushed the plaintiff off to a police station, believing her to be guilty, and fearful that she would escape. This story, so far from establishing a justification, only makes more clear than the plaintiff's evidence did, that the arrest was wholly inexcusable.

The judgment must be affirmed with costs.

The other Justices concurred.