BRENNER *v.* DYKSTRA.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.
   The testimony must be viewed by the Supreme Court in a light most favorable to plaintiff where a verdict is directed against plaintiff.

2. JUDGMENT—PHYSICAL FACTS.
   A judge may set aside a verdict for plaintiff and direct one for defendant where the physical facts are such that it is impossible for the accident to have happened in the manner claimed.

3. AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—FLEETING GLANCE.
   Something more than a fleeting glance at an approaching car is necessary if plaintiff seeks to avoid the burden of contributory negligence.

4. SAME—INTERSECTIONS—CONTRIBUTORY NEGLIGENCE—STOPPING.
   Plaintiff motorist driving at 7 p. m. on a day in August toward intersection of two bumpy gravel country roads at speed of not less than 20 miles an hour, whose vision to left, direction from which defendant motorist approached, was obscured by field of corn until about 15 feet from nearest side of crossroad *held,* guilty of contributory negligence as a matter of law in proceeding to cross in front of car approaching at rapid rate of speed without making stop which could have been effected within a distance of 10 feet.

Appeal from Kent; Brown (William B.), J. Submitted April 13, 1939. (Docket No. 10, Calendar No. 40,396.) Decided June 22, 1939.

Case by Eslyn Brenner against John S. Dykstra and Sitch Dykstra for personal injuries sustained in an automobile collision. Verdict and judgment for plaintiff. Defendant appeals. Reversed without a new trial.

*Ralph M. Bahna* (*Abner Dilley,* of counsel), for plaintiff.

*Linsey, Shivel, Phelps & Vander Wal,* for defendants.

CHANDLER, J.· Inasmuch as the only question to be determined on this appeal is whether or not plaintiff was guilty of contributory negligence as a matter of law, we will accept as true plaintiff's counter-statement of facts, appearing in his brief as follows:

"This case arises out of a collision between an automobile owned and driven by plaintiff and an automobile owned by Sitch Dykstra and driven by his son and codefendant, John S. Dykstra, at an intersection of two unpaved gravel roads at a place known as Bos' Corners in Ottawa county, Michigan. The north and south road, known as Mud Lake road, runs south from the village of Hudsonville and intersects with the other road, known as the 16th street road, which runs east and west. These roads are practically alike as to condition and are the ordinary country type, unpaved, gravel surface, and bumpy and rough. They are about 13 or 14 feet in width. On the northeast corner of the intersection was a cornfield which started 15 feet from the edge of the gravel portion of the road.

"On the 12th day of August, 1937, at about 7 o'clock in the evening, plaintiff was driving his automobile south upon the north and south highway and approached the intersection above described. Defendant John Dykstra was driving his father's automobile west upon the east and west road. Both roads were dry, the day was bright and the sun was shining. As plaintiff approached the intersection, he made observation in all directions. No traffic was approaching from the west and none from the south. On his left was the cornfield above mentioned which obscured his vision to the east for any considerable distance until he arrived at a point about 15 or 16 feet north of the north line of the intersection. When

he arrived at that point he had reduced his speed and had his car under control so that he could have stopped before entering the intersection. He there made observation to the east and saw defendant's car approaching at a distance which he estimated to be about 200 to 250 feet away. Plaintiff had driven cars for many years. He was familiar with this intersection. He knew the rough and bumpy condition of both roads and assumed that in view of such condition defendant was driving at a reasonable rate of speed. He concluded that defendant's car was a sufficient distance from the intersection to enable him to cross safely and entirely without interference or danger. He was in plain view of defendant and upon defendant's right. He accelerated his car and when about three or four feet from the intersection he again looked to the east and discovered that defendant was approaching at a great rate of speed towards him, and was only about 40 feet away, 'he was coming right down, right upon me.' Plaintiff as quickly as possible applied his brakes and swerved his car to the right. Defendant made no effort to stop or to slacken his speed. Neither did defendant attempt to swerve or turn his car either to the right or to the left, to avoid striking plaintiff. Defendant continued in a straight line on his course of travel, without slackening his speed or swerving or turning to one side or the other, and struck plaintiff's car on the left front wheel and left front fender. Defendant's car carried plaintiff's car across the intersection and turned it over on its top. Defendant's automobile continued to travel, it left the road, and proceeded in a southwesterly direction across the ditch along the road and thence through a field which had been plowed that day, a distance of 31 paces, or approximately 90 feet from the place of impact where it came to a stop in said freshly plowed field. Plaintiff's automobile was demolished and damaged to an extent beyond repair.    * * *

"At the conclusion of the testimony the court denied defendant's motion for directed verdict. Subsequently a motion for judgment notwithstanding the verdict was also denied by the court. Defendant appeals claiming that under the testimony plaintiff was guilty of contributory negligence as a matter of law."

On cross-examination, plaintiff testified:

"*Q.* So your car traveled 20 to 25 feet while Dykstra's car was traveling the 250 feet to the point where the accident took place?

"*A.* That is right.

"*Q.* We want to be sure about that, don't we?

"*A.* That is right.

"*Q.* In that 20 or 25 feet you could have stopped your car if you had wanted to?

"*A.* Yes.

"*Q.* But instead of that, you put the gas on, is that right?

"*A.* I say, yes. * * *

"*Q.* Now, witness, while your car was traveling that 20 to 25 feet, going from 20 to 25 miles an hour, Dykstra's car was going at such a high rate of speed it was able to travel 250 feet and got up there to where the collision took place, is that right?

"*A.* That is right.

"*Q.* Say your car traveled 25 feet; do you know how many times 25 goes into 250? Just ten times, doesn't it?

"*A.* Yes.

"*Q.* Ten times 25 is 250?

"*A.* That is right.

"*Q.* In other words, he was going 10 times as fast as your car, or you would not have come together?

"*A.* That is right."

Plaintiff testified that at no time before the collision was his car traveling less than 20 miles per

hour, and that at this speed he could have braked the car and stopped in a distance of 10 feet.

The facts and questions of law in the instant case are indistinguishable from those involved in *Nelson* v. *Linderman,* 288 Mich. 186, wherein Justice SHARPE, speaking for the court, said:

"In cases where a verdict is directed against plaintiff, we must view the testimony in a light most favorable to plaintiff. In *Dzikowski* v. *Railroad,* 282 Mich. 337, we said:

" 'We have repeatedly held that where physical facts are such that it is impossible for the accident to have happened in the manner claimed, the judge may set aside the verdict and order one for the defendant.'

"When we examine Nelson's testimony in the light of the above authority, we are forced to the conclusion that when he made his last observation of the position of defendant's car, he was mistaken as to its distance from the intersection. Plaintiff testified that while he traveled from a point 8 or 10 feet north of the intersection to the place where the collision occurred, a distance of approximately 25 feet, and at an average rate of speed of 12 miles per hour, the defendant's car traveled a distance of 300 feet or 12 times farther than plaintiff's. The conclusion is inevitable that under plaintiff's theory, defendant's car was traveling at a speed of approximately 144 miles per hour over a graveled road. We cannot assume that defendant's car was traveling at any such speed, and conclude that plaintiff was mistaken as to the distance defendant's car was from the intersection when plaintiff made his last observation.

"In *Carey* v. *De Rose,* 286 Mich. 321, plaintiff stopped her car 18 to 20 feet south of the fence line before crossing a trunkline highway and had to cross a distance of 60 to 70 feet in order to get

in a place of safety, while defendant was traveling a distance of 1,175 feet. We there said:

"'Had Mrs. Carey looked while crossing the intersection it is manifest that she would have seen the approaching car in ample time to have avoided the collision. * * * The unquestioned carelessness of Mrs. Carey was a question of law and not for consideration of the jury.'

"In the case at bar, plaintiff had to travel a distance of approximately 35 feet in order to get to a place of safety. He could stop his car within a distance of 4 or 5 feet. Under the circumstances in this case, plaintiff driver's failure to make any observations while he was traveling the last 25 feet precludes recovery. Something more than a fleeting glance at an approaching car is necessary if plaintiff seeks to avoid the burden of contributory negligence."

The physical facts in the instant case make it clear that plaintiff was guilty of contributory negligence as a matter of law, and that the trial court erred in not directing a verdict for defendant.

Judgment reversed, without a new trial, with costs to defendant.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, NORTH, and McALLISTER, JJ., concurred.