MURPHY *v.* ROUX.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.
    The evidence presented is viewed in the light most favorable to
    plaintiff on appeal from order granting defendant's motion
    for directed verdict at the close of plaintiff's proofs on ground
    that she had failed to establish her freedom from contributory
    negligence.

2. AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—EVIDENCE.
    Question as to whether southbound plaintiff motorist was guilty
    of contributory negligence *held,* a question of fact for jury
    in her action against defendant motorist whom she had observed
    while westbound on an intersecting road and who had made a
    wide turn to his right and forced plaintiff to shoulder of
    road at her right to avoid a head-on collision and, after passing
    defendant, her car came into contact with cement abutment
    on the shoulder and caused her injuries.

Appeal from Saginaw; O'Neill (James E.), J.
Submitted January 10, 1958. (Docket No. 40, Cal-
endar No. 47,299.)   Decided April 14, 1958.

Case by Frances Murphy against Joseph C. Roux
for personal injuries sustained in automobile colli-
sion.   Directed verdict and judgment for defend-
ant.   Plaintiff appeals.   Reversed and remanded.

*van Benschoten & van Benschoten,* for plaintiff.

*Heilman & Purcell,* for defendant.

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error §§ 886, 945.
[2] 5A Am Jur, Automobiles and Highway Traffic §§ 681, 727, 1028.

SMITH, J. This is an automobile accident case. The appeal is from the grant of defendant's motion for a directed verdict at the close of plaintiff's proofs.

Relating the facts in the light most favorable to plaintiff, she, Mrs. Murphy, was traveling south on South Merrill, a black-top country road. Defendant Roux was traveling west on Colvin, a gravel road. Neither road is superior, although Mrs. Murphy was under the impression that cars entering South Merrill from Colvin were under a duty to stop. As she proceeded south, on her own side of the road, at a speed of from 50 to 55 miles per hour, she observed defendant's car coming from the east on Colvin. It slowed down slightly at the intersection (she thought it was going to stop), then entered South Merrill road. It was the manner of entrance that (allegedly) gave rise to the accident. Mrs. Murphy testified that defendant made a wide turn, that he "pulled way over in my lane and forced me off the highway." She says that he was "completely over" in her lane and that she would have "hit him head-on" had she continued on her course. Accordingly, she says, she swung out to her right onto the shoulder and it was on the shoulder, as she was trying to regain the paved portion, that she hit a cement abutment which caused her injuries.

Upon these facts why is there any doubt about a prima facie case? It was because Mrs. Murphy was a very poor witness. How wide was the traveled portion of South Merrill road? She didn't know. How wide was Colvin road? She didn't know. How fast was she going? That she did know. She had glanced, off and on, at her speedometer. It was between 50 and 55 miles per hour. What speed was defendant going on Colvin road? She didn't know. She did know that he slowed up. Slowed to what speed? "I don't know," she replied. How far north

of the intersection was she when she saw him slow down? Again, no idea. "I'm very poor with feet" was the way she put her inability to gauge the distance. Another witness who was present at the scene of the accident testified in her behalf. We will analyze his testimony at a later point. Verdict was directed against plaintiff on the ground that she had not established her freedom from contributory negligence.

We have had before us upon occasion, it is true, cases in which both plaintiffs and defendants have been able to testify with the assurance of surveyors and mathematicians as to distances, speeds, lengths, widths, angles and relative positions. Not all are blessed with faculties so acute. Yet even litigants who, as Mrs. Murphy, are "very poor with feet" may have a cause of action. How far may we retreat from the precision of the well-drilled witness with his mental stop watch and yardstick before we must hold that the case has dissolved into such vagueness and uncertainty as not to merit submission to the jury? We probably answer very little when we say that it depends upon the nature of the case, the showings made, and the reasonable inferences to be drawn therefrom. Yet all would concede that the fraction of an inch crucial on the question of negligence in brain surgery speaks not with the same authority on the question of negligence involving 2 automobiles on a country highway.

Here the crux of the argument centers around the distance of plaintiff from the intersection at the time the defendant commenced his alleged roundhouse turn, swinging all the way onto the wrong side of the road and approaching the oncoming driver thereon. Was plaintiff's car then right on top of the intersection, so to speak? In other words, was there an emergency situation in which reflexes must respond in fractions of a second? Or was plaintiff

a comfortable distance away, in a position to observe defendant's wide-sweeping turn with the detachment of an interested observer, having ample time to reflect and act? In short was she so close that she was involved in his turn almost as a participant or was she so far distant that she was a mere spectator? We agree with defendant that if the favorable view of the testimony would leave the record silent on this point, plaintiff's proofs as to her freedom from contributory negligence would have been deficient.

But the record is not so silent. Here the location of the automobiles involved is made reasonably specific by the testimony of Mrs. Murphy, supplemented by that of her witness Becker. Mrs. Murphy had testified that the 2 cars passed each other, prior to her crashing with the abutment, "right along by the gas station there." (Exhibit 10, a photograph of a blackboard drawing of the area used at the trial, shows the intersection of South Merrill and Colvin roads, at or near which intersection is situated a gasoline filling station.) Witness Becker testified that he was sitting in his father's car, in front of the gasoline pumps at this filling station, facing north (the direction from which Mrs. Murphy was approaching). From this position, he testified on direct examination, he saw Mrs. Murphy's car when she turned onto the shoulder, which spot was approximately 90 feet north of him, and, turning around, saw that "she hit the abutment." He did not see her pass. "I just saw the dust. It was that quick." (Mrs. Murphy had testified that it all happened in a "split second.") It was brought out on cross-examination that Mr. Becker did not actually see her turn onto the shoulder some 90 feet away. That point, he says, is where the cloud of dust started. But it would seem a reasonable inference, well within the jury's competence, that the dust was

raised by Mrs. Murphy's car. There was no other traffic on the road. In addition, Mr. Becker testified that when defendant stopped his car, the front bumper was slightly over the center of the road with the car headed in a northwesterly direction. Upon these facts a jury would be justified in finding that a sudden emergency had been created by defendant's acts and that Mrs. Murphy's reaction thereto was not unreasonable:

The words of Mr. Justice BLACK's concurrence in *Davis* v. *New York Central R. Co.*, 348 Mich 262, 273, 274, are applicable to the facts before us. It was there said:

"The question, then, brought here by plaintiff, is whether the judge was right in assuming to determine the issue himself.

"The problem of contributory negligence is usually complicated by the necessity of taking into account 2 sets of causally-connected circumstances affecting conduct of different persons—in this case the plaintiff motorist and the defendant's engineer. Whether plaintiff was contributorily negligent depends, in part, on what if anything he had a right to expect of the engineer. This requisite of dual view of the action of 2 persons—'if the danger depends at all upon the action of any other person,'— when a court undertakes consideration of a motion for instructed verdict aimed at contributory negligence, is the essence of and reason for our *general* rule that 'the question of negligence is a question of fact and not of law.' (*Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich 99, 118, 119.)

"Our difficulty in recent years is due, I think, to a want of reflective thought upon the fenced-in position the moving party occupies when he asks that the court decide the issue of contributory negligence to exclusion of the jury. Actually, and when a defendant moves that the court so decide, he concedes for the purposes of his motion all that his opponent

may rightfully claim from the evidence (*Van Steinburg,* p 118 of report). * * * The case must now, as in the days of our Court from COOLEY through FELLOWS, be a very clear one which will justify the court in taking upon itself the responsibility of instructing a verdict on assigned ground of contributory negligence."

See, also, *Hopkins* v. *Lake,* 348 Mich 382.

It is our conclusion that the issues in this case should have been presented to the jury. The judgment is reversed and the cause remanded for a new trial. Costs to appellant.

BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred with SMITH, J.

DETHMERS, C. J., and CARR and KELLY, JJ., concurred in the result.