NABOZNY v. HAMIL.

1. NEGLIGENCE—QUESTION FOR JURY—DIRECTED VERDICT.
   Generally, the question of negligence is a question of fact for the jury, but where the facts are not in dispute and the negligence of defendant is crystal clear, it is proper to direct a verdict for plaintiff on the issue of liability.

2. AUTOMOBILES—NEGLIGENCE—AUTOMATIC GEARSHIFT.
   Defendant motorist was negligent as a matter of law where injuries to plaintiff in parallel parked truck ahead of defendant resulted from twice striking the truck because she had left motor running and the car with automatic shift in gear and let her foot slip from brake pedal to the accelerator pedal as she reached over to close right front door upon departure of her young son from the car.

BLACK and KAVANAGH, JJ., dissenting.

Appeal from Oakland; Beer (William John), J. Submitted June 9, 1960. (Docket No. 31, Calendar No. 48,437.) Decided December 1, 1960.

Case by Theodore A. Nabozny against Robert Hamil and Betty Hamil for personal injuries sustained when defendants' automobile was inadvertently started from parked position and struck delivery truck. Directed verdict of negligence, resulting in verdict and judgment for plaintiff. Defendants appeal. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 38 Am Jur, Negligence §§ 344, 345; 53 Am Jur, Trial § 385 et seq.
[2] 5A Am Jur, Automobiles and Highway Traffic § 414.

*Earl C. Opperthauser,* for plaintiff.

*Howlett, Hartman & Beier* (*William B. Hartman,* of counsel), for defendants.

BLACK, J. (*dissenting*). This Court in recent years* has reaffirmed devotion to Mr. Justice COOLEY's enduring aphorism that, "As a general rule, it cannot be doubted that the question of negligence is a question of fact and not of law." (*Detroit & Milwaukee R. Co. v. Van Steinburg,* 17 Mich 99, 118.) The question of negligence in the case before us comes within that rule, and so I vote to reverse this judgment for plaintiff, same having been entered upon determination by the court that the defendant driver was guilty of actionable negligence.

The stated general rule was considered at length by Mr. Justice COOLEY in his timelessly dependable workbook of torts. Quoted as follows, from 3 Cooley on Torts (4th ed), § 481, p 389, is that portion of the text which gives the author's principal reasons for the view that the defendant's negligence (as claimed by the plaintiff) is usually a question for the jury:

"The question will often be, does the defendant appear to have exercised the degree of care which a reasonable man would be expected to exercise under like circumstances? To such a question a man of

---

* *Clark* v. *Shefferly,* 346 Mich 332, 335–337; *Ohman* v. *Vandawater,* 347 Mich 112, 116, 117; *Kaminski* v. *Grand Trunk W. R. Co.,* 347 Mich 417, 420, 421; *Barron* v. *City of Detroit,* 348 Mich 213, 217, 218; *Davis* v. *New York Central R. Co.,* 348 Mich 262, 268, 269, 274; *Hopkins* v. *Lake,* 348 Mich 382, 396, 397; *Normand* v. *Thomas Theatre Corporation,* 349 Mich 50, 56; *Sun Oil Co. v. Seamon,* 349 Mich 387, 403; *Taylor* v. *Butcher,* 349 Mich 581, 585; *Steger* v. *Blanchard,* 350 Mich 579, 587; *Ware* v. *Nelson,* 351 Mich 390, 397; *Murphy* v. *Roux,* 352 Mich 97, 101; *McKenzie* v. *Nelson,* 353 Mich 59, 61; *Gilson* v. *Bronkhorst,* 353 Mich 148, 151; *Cole* v. *Barber,* 353 Mich 427, 430; *Landon* v. *Shepherd,* 353 Mich 500, 508; *Booth* v. *Bond,* 354 Mich 561, 570; *American Airlines, Inc.,* v. *Shell Oil Company, Inc.,* 355 Mich 151, 154; *Murchie* v. *Standard Oil Company,* 355 Mich 550, 557; *Churukian* v. *LaGest,* 357 Mich 173, 179; *Stillwell* v. *Grubaugh,* 357 Mich 344, 352, 357.

exceeding cautious temperament might respond that he did not; another more sanguine and bold might say he did; and by the side of one or the other of these would the rest of the community range themselves, each person largely affected by temperament and perhaps by his own experience, but firmly maintaining that rule to be a proper one which now, on a retrospective examination of the facts, seems to him to be such.

"If the judge, in such a case, were to pass upon negligence as a question of law, he must, in doing so, be endeavoring to enforce a rule of a variable nature, which must take its final coloring from the experience, training, and temperament of the judge himself; a rule which his predecessors might not have accepted, and which his successor may reject, and upon which a court of review may reverse his action, not because the facts are differently regarded, but because judges are men and men are different."

True it is that judges "are different," and true it has always been that a jury ordinarily is better qualified than one man to judge, upon the presented evidence, whether a want of due care has been shown. Turning (again as in *Barron* and *Normand, supra*) to the first and now memorable instances when the Federal supreme court determined that the precepts of COOLEY—recorded in *Van Steinburg*—should be followed in the courts of the United States (*Sioux City & Pacific R. Co.* v. *Stout,* 84 US 657, 663, 664 [21 L ed 745]; *Grand Trunk R. Co.* v. *Ives,* 144 US 408, 417 [12 S Ct 679, 36 L ed 485]), we find complete uniformity of viewpoint that the trial judge has no right to instruct that a party at bar has been shown guilty of negligence unless the judge is able to say that his opinion is also the opinion that *all* reasonable men would entertain of the question.* *Stout* says (pp 663, 664):

---

* "When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or·

"It is true, in many cases, that where the facts are undisputed the effect of them is for the judgment of the court, and not for the decision of the jury. This is true in that class of cases where the existence of such facts come in question rather than where deductions or inferences are to be made from the facts. If a deed be given in evidence, a contract proven, or its breach testified to, the existence of such deed, contract, or breach, there being nothing in derogation of the evidence, is no doubt to be ruled as a question of law. In some cases, too, the necessary inference from the proof is so certain that it may be ruled as a question of law. If a sane man voluntarily throws himself in contact with a passing engine, there being nothing to counteract the effect of this action, it may be ruled as a matter of law that the injury to him resulted from his own fault, and that no action can be sustained by him or his representatives. So if a coach driver intentionally drives within a few inches of a precipice, and an accident happens, negligence may be ruled as a question of law. On the other hand, if he had placed a suitable distance between his coach and the precipice, but by the breaking of a rein or an axle, which could not have been anticipated, an injury occurred, it might be ruled as a question of law that there was no negligence and no liability. But these are extreme cases. The range between them is almost infinite in variety and extent. It is in relation to these intermediate cases that the opposite rule prevails. Upon the facts proven in such cases, it is a matter of judgment and discretion, of sound inference, what

not, the determination of the matter is for the jury. It is only where the facts are such that *all* reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court." (Quotation from *Ives,* p 417 of report, citing numerous authorities including *Van Steinburg* and other early Michigan cases.) This test, that *all* reasonable minds must reach the same conclusion before the question of negligence may be considered an exclusive question of law, is the Michigan test. See assembly of Michigan cases in *Scharman* v. *Bay County Bridge Commission,* 158 Mich 77, 83, and *Beach* v. *City of St. Joseph,* 192 Mich 296, 301.

is the deduction to be drawn from the undisputed facts. Certain facts we may suppose to be clearly established from which one sensible, impartial man would infer that proper care had not been used, and that negligence existed; another man equally sensible and equally impartial would infer that proper care had been used, and that there was no negligence. It is this class of cases and those akin to it that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. *This average judgment thus given it is the great effort of the law to obtain. It is assumed that 12 men know more of the common affairs of life than does 1 man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge.*" (Emphasis supplied by the present writer.)

In the case before us, as we shall presently see, the Court is called upon to apply its judgment to the question of want of due care of a motorist while using a modern appliance of motordom, the automatic transmission. Are judges supposed to know more about the proper manner of performing one's common-law duty in these circumstances than are jurors? I find direct answer in *Ashman* v. *Flint & P.M.R. Co.*, 90 Mich 567. There the question was one of want of care of a railroad switchman whose act of pulling a "pin," with knowledge that a nearby "frog" (in the track) was open and unblocked, resulted in personal injury and suit against his employer. The Court said (pp 574, 575):

"A jury of 12 men, drawn from the body of the people, and from all the avocations of life, would be

more likely to have among its members men familiar with switching or braking upon railroads than would the bench, composed of men whose whole lives have generally been devoted to 1 subject,—the study and practice of law; and among these 12 men might quite frequently be found men who had been switchmen or brakemen. When the inquiry arises in any case what an ordinarily prudent man would have done under given circumstances, the judgment of 12 men is obviously better than the judgment of 1, as the experience in life of 12 men must have been, collectively, more varied and extensive than that of any 1 man, however learned in the law he may be; and how men ordinarily act in the presence of danger, or to avoid it, can be better settled by 12 men than 1 man, because their united experiences are brought to bear upon the question, and each has the benefit of the experience of all of them in arriving at a fair, true, and just conclusion."

I have examined the testimonial facts, shown in the case before us, with the foregoing rules in mind. Such facts are properly stated, with favor due to the defendant driver, in the brief of her counsel as follows:

"On October 18, 1957, the defendant, Betty Hamil, driving her husband's 1956 model Buick automobile with automatic transmission, parked on Nine Mile road in the city of Oak Park immediately behind a Ward Baking Company truck occupied and operated by the plaintiff. Mrs. Hamil's small son got out of the car on the right side to go to a barber shop and failed to close the car door. Mrs. Hamil, as was her custom when making a short stop, left the transmission in the 'Drive' position and held her foot on the brake. As she reached across to close the right hand car door, her foot slipped off the brake pedal and engaged the accelerator causing the car to go forward into collision with the rear end of the truck."

To these facts I would add that the collision resulted in serious injury to plaintiff, attested by a damage-verdict and judgment in his favor for $30,000.

Do we have a right to say that Mrs. Hamil's conduct, giving it the most favorable construction it will bear under her testimony,* was such that *all* men and women of reasonable minds would conclude that she was negligent? Would not *some* reasonable men and women disagree upon the answer? Would not the answer of reasonable men and women depend in whole or in part upon the knowledge or want of knowledge they might have of driving modern automobiles; upon their experience or want of experience with a similarly unintentional application of engine power and, generally, upon their own habits of comparative caution or inattention in like circumstances?

Suppose, by way of illustrative hypothesis, that Mrs. Hamil's little 5-year old (remaining temporarily in the car after his mother brought it to a stop at the curb) had suddenly, by accident or childish design, depressed the accelerator with similar tragic result. Would we be as quick then to approve an instructed verdict against the mother? Should the mother—as a matter of law—have foreseen and prevented either the result of her own acts as testified or the hypothetically stated act of her son? Are we not holding now, for every case where the defendant driver's foot slips from brake to accelerator (when, say, his car is stopped for traffic signal and pedestrian passage), that he is guilty of actionable negligence by the common law—*as a matter of law?*

---

* Such is our rightful assay: "the most favorable construction that can possibly be given to such testimony" (*Gibbons* v. *Farwell,* 63 Mich 344, 348 [6 Am St Rep 301]).

To me these unanswered questions admit of but one conclusion; that we have no right to affirm that *all* reasonable men and women would agree that Mrs. Hamil was actionably at fault.

If the writer were a member of a duly seated jury, rather than a judge called upon to decide a legal question, he probably would vote to hold Mrs. Hamil guilty of negligence. But that conviction would in all likelihood enter the juryroom as a result of the experience of having driven "dynaflow" equipped Buick automobiles steadily since Buick offered to the public such distinctive feature of transmission of power; an experience which—sooner or later— is bound to teach that special caution should be observed whenever the car is stopped with idling engine connected to the rear wheels by that which really does "dynaflow" when the accelerator is intentionally or accidentally depressed.

Other driver-jurors, the experience of whom has been that of "straight-stick" driving or that of use of other types of automatic transmissions with somewhat dissimilar-from-Buick positions of brake and accelerator pedals, might reasonably reach another conclusion, that of so unusual and unforeseen a train of circumstances—in the unique case at bar—as to suggest pure accident rather than negligence. All of this tends to establish that the case is one where neither the trial judge below, nor our membership here, could or may of right draw upon that "experience, training and temperament of the judge himself" to determine validity of this motion for peremptory instruction. So say the cited governing authorities, applied here as they should be.

Always present, when trial and appellate judges weigh motions for instructed findings in common-law negligence cases, is the subliminal temptation to employ one's own critical opinion of what the accused party should or should not have done in the situa-

tion where he has acted or failed to act. The temptation should be resisted to the utmost save only when the judge is willing to set his signature to an opinion that *all* reasonable men (and women now that we have them seated as jurors) would agree with his conclusion of actionable negligence, or contributory negligence, as the case may be. This is especially so where the negligence, if any, consists of violation of one's duty to exercise due care, according to the common law, distinguished from proven violation of a safety statute. And it is doubly so when the judge considers peremptory conviction of a *defendant* when the latter is charged with actionable negligence.

So far, in the course of present writing, the case has been considered by the standards we apply when the *defendant,* not bearing the burden of proof, moves for an instructed verdict. As it comes here, however, this plaintiff's case is measurably different. Without motion by the plaintiff burden bearer for an instructed verdict of liability,* the trial judge assumed to instruct that the *defendants* stood at his bar convicted of actionable negligence. He did not state the nature or specifications of the negligence found by him, and so we do not have the benefit of his reasoning toward or identification of whatever irresistible inference he drew—as a matter of law—from the oral evidence. The case, then, is one where the trial judge has usurped the jury function

---

* The transcript shows no motion by either party for an instructed verdict, and no discussion which might lead to conclusion that such a motion was made at chambers without record thereof. To avoid misunderstanding, however, I make note of the fact that plaintiff included, in his requests to charge, the following:

"3. Inasmuch as there is evidence that the defendant, Betty Hamil, was guilty of negligence as a matter of law and there is no evidence that the plaintiff, Theodore A. Nabozny, was guilty of any negligence which could have been the proximate cause of this accident, there is no question of liability in this case for you to decide. You, therefore, shall confine your deliberations to the question of damages."

by drawing from the frailties of oral proof an affirmative inference he preferred over other arguable inferences; an inference the plaintiff was required to establish by the rules of burden and preponderance. Noting that he was not the trier of fact, I find error.

At this point I advert to plaintiff's pleaded theory of recovery; that Mrs. Hamil was guilty of causal violation of statute in that she drove at a speed greater than would permit her to bring defendants' car to a stop within the assured clear distance ahead. Having erroneously pleaded and presented his case that way and having erroneously urged the same theory of recovery here, may plaintiff recover *by right of law* distinguished from jury verdict on some not-yet-identified common-law theory? Mr. Justice CHAMPLIN, writing in *Thomas* v. *Chicago & G.T.R. Co.*, 86 Mich 496, 500, gave this answer:

"We have always required the party alleging negligence, for which he seeks to recover for an injury caused thereby, to state in his declaration the duty and the neglect of duty upon which he relies, and held that he must be confined in his proof and recovery to the allegations in his declaration. He is not permitted to allege negligence under the circumstances stated in his declaration, and recover for negligence not stated."

Turning from this to the question whether Mrs. Hamil was guilty of causal negligence by the common law, certain questions arise which of right should be settled in a jury room. Should Mrs. Hamil have placed the shift lever in "neutral" before leaning over to close the door? Should she have stopped the engine? Did she exercise the care or want of care of "the great mass of mankind" (*Sonsmith* v. *Pere Marquette R. Co.*, 173 Mich 57, 90; *Barron* v. *City of Detroit*, 348 Mich 213, 217) when she placed her foot on the brake and leaned over to close the

door? Was she, as a credible or incredible witness, able to relate with pinpoint accuracy just how her foot happened to slip from brake to accelerator? Should she have foreseen the possibility or probability of that which ensued as she undertook, with her foot presumptively (on favorable view) secure against the brake pedal, to lean over and close the right-hand car door?

There is only one answer to these questions. It is that the trial judge drew upon his own "experience, training and temperament" as the sole basis for decision to instruct this verdict of absolute liability.

The pivotal subject matter being negligence and causation *according to the common law,* our established rule is that the trial judge must say whether negligence *may* be inferred from the oral evidence and, if so, that the jury must say whether negligence *ought* to be inferred therefrom (*Carver* v. *Detroit & Saline Plank Road Co.,* 61 Mich 584, 591; *Kaminski* v. *Grand Trunk W. R. Co.,* 347 Mich 417, 419, 420). This rule was laid down, of course, for cases turning upon the common law; the plaintiff bearing as here the burden of proof of negligence and causation. When in such cases the *defendant* moves for an instructed verdict he stands properly on the right to urge that the party bearing the burden of persuation, granting that party everything under the rule of favorable view, has failed as a matter of law to support such burden; whereas when the *plaintiff* moves his burden is that of persuading the judge that the presented case has been proven so convincingly that no questions, including those of credibility and identity of the inference or inferences which *ought* to be drawn from the testimony, are left for consideration of the jury. Which is to say that it takes something more (such as an admission of liability under Court Rule No 23, § 8 [1945]) to

justify directing a verdict (of liability) for the *plaintiff* in a common-law negligence case.

In Michigan, heretofore, the trial judge has had no right or power to take such questions from the jury and decide them in favor of the party bearing the burden of persuasion. Now, however, relying on an interlocutory and unreviewed one-judge decision of a *trial* court of New York based on that State's "modern" summary judgment practice (*Cacciato* v. *Leatherman,* 23 Misc 2d 550 [200 NYS2d 152]), and a case of adjudged causal violation—by the *plaintiff* burden-bearer—of a traffic safety *statute* and due approval of a granted motion for directed verdict made by the *defendant* (*Churukian* v. *LaGest,* 357 Mich 173, 179), our majority lightly casts aside these matured doctrines. Following quotation of *Churukian* my Brothers make their 16-point turnabout this way:

"We believe this language equally applicable to the factual record presented by the present case even though the verdict was directed for the plaintiff rather than the defendants.\*";

and support themselves solely by this footnote:

"\*For discussion of the legal principles involved in directing verdict for a plaintiff, see 3 Cooley on Torts (4th ed), § 481; Sunderland, Directing a Verdict for the Party having the Burden of Proof, 11 Mich L Rev 198; Smith, The Power of the Judge to Direct a Verdict, 24 Columbia L Rev 111."

(I make parenthetical note, at this point, that the complete and accurate title of the last-mentioned reference is "The Power of the Judge to Direct a Verdict: Sec. 457-a of the New York Civil Practice Act.")

For the first time in the recorded history of this Court, we behold a majority decision approving the direction of a verdict for the plaintiff in a case where

that plaintiff is entitled to recover, if at all, solely on account of actionable negligence he must prove according to the common law.* The case marks, too, our second majority vote—this year—to approve a directed verdict for the party bearing the burden of proving that which, by the common law, provides the sole basis of his case or defense (see *Waltanen* v. *Wiitala,* 361 Mich 504). I must dissent again, stating reasons per requirement (Const 1908, art 7, § 7), as follows:

A State court decision, supported by no precedent whatever in the State of its origin and opposed by a settled rule of substance prevailing in that State for nearly 80 years (the reference is to *Woodin* v. *Durfee,* 46 Mich 424, reversing a judgment for the plaintiff on directed verdict),† should not be made upon offhand references to treatises and decisions which, strained at very best, do but reflect repealed and now uncertain law in one other State. These references I shall consider in order, noting, to avoid misunderstanding, that the ensuing discussion is applied solely to a case turning upon the presence or absence of actionable negligence at common law.

*First:* By quotation appearing in the forepart of this opinion (see previous quotation thereof to the same point in *Kaminski* v. *Grand Trunk W. R. Co.,* *supra*) the present writer continues to rely upon Judge Cooley's reasoning and pointed epigram—

---

* Consider this rule (approved in *Carver, supra,* p 592):

"There is, in every case, a preliminary question, which is one of law, *viz.,* whether there is any evidence on which the jury could properly find the verdict for the party on whom the onus of proof lies. If there is not, the judge ought to withdraw the question from the jury, and direct a nonsuit if the onus is on the plaintiff, or direct a verdict for the plaintiff if the onus is on the defendant."

† "A jury may disbelieve the most positive evidence, even when it stands uncontradicted; and the judge cannot take from them their right of judgment. If they return what he thinks is a perverse verdict, he may set it aside and order a new trial; but he cannot take upon himself their functions as was done here." (*Woodin,* p 427.)

"judges are men and men are different" (3 Cooley on Torts (4th ed), § 481, p 389). My respected Brethren refer now to the same section as supporting their view that this instructed verdict—for a *plaintiff*—was quite all right.

I speak now in terms of gentle restraint. The reader will find nothing, anywhere in said section 481, tending to disclose "the legal principles involved in directing verdict for a plaintiff." He will find, in that section, unanswerable reason for repudiation of the practice (in common-law negligence cases). Quoted—again for emphasis—is the conclusion of the subject as it appears in the identified section (p 389):

"If the judge, in such a case, were to pass upon negligence as a question of law, he must, in doing so, be endeavoring to enforce a rule of a variable nature, which must take its final coloring from the experience, training, and temperament of the judge himself; a rule which his predecessor might not have accepted, and which his successor may reject, and upon which a court of review may reverse his action, not because the facts are differently regarded, but because judges are men and men are different."

*Second:* Turn now to majority reliance on Professor Sunderland's paper headed "Directing a Verdict for the Party Having the Burden of Proof" (11 Mich L Rev 198). Here we find the authorities collected and divided into 3 classes:

*"Class 1. Cases which hold that the party carrying the burden of proof cannot avail himself of a motion for a directed verdict in his favor."*

*"Class 2. Cases holding that the party carrying the burden of proof cannot obtain the direction of a verdict in his favor when his case rests in whole or in part upon oral evidence, but that such a direction may be based upon written evidence."*

*"Class 3.   Cases in which it has been held that a verdict may be directed in favor of the party having the burden of the issue irrespective of the character of the evidence."*

Classes 1 and 2, it is perceived, portray Michigan's unequivocal position that the party carrying the burden of proof is not entitled to an instructed verdict where his case or defense depends on oral proof.   To such point the first 2 text paragraphs of class 1 are quoted without comment (they provide all comment necessary) as follows:

"These [cases] are almost all expressly grounded upon the proposition that a fact cannot be assumed to be proved merely because there is uncontroverted evidence in support of it, for the reason that there are 2 elements present in all evidence, namely, the facts shown and the credibility of the witnesses who testify to them.   Although no issue be raised upon the facts directly, through failure to deny, yet this cannot be deemed an admission that the witnesses who so testified are worthy of belief.

"This doctrine is expressed in forcible language by the Supreme Court of Michigan, in *Woodin* v. *Durfee* [*supra,* 427], as follows: 'A jury may disbelieve the most positive evidence, even when it stands uncontradicted; and the judge cannot take from them their right of judgment.'   And in *Charleston Insurance & Trust Co.* v. *Corner* [2 Gill (Md) 410, 426, 427], the supreme court of Maryland was equally outspoken in announcing the same rule, saying: 'The instructions asked by the appellee, who was plaintiff below, were not based on an assumed state of facts, to be submitted to the consideration of the jury. They were moved, it would seem, in the confidence, that as the evidence was uncontradicted, the jury could not do otherwise than find the facts accordingly.   *   *   *   Doubtless the jury would have found these facts according to the testimony, but the sufficiency of the evidence to satisfy the jury, or the cir-

cumstance, that it is all on one side, does not authorize the court to direct the jury, that it proves the fact. They have the power to refuse their credit, and no action of the court should control the exercise of their admitted right, to weigh the credibility of the evidence'."

*Third:* The third and last reference made by my Brothers is to the paper appearing in 24 Columbia L Rev 111. All that need be said about this paper is that it was built upon and around a provision of the New York civil practice act, reading:

"The judge may direct a verdict when he would set aside a contrary verdict as against the weight of evidence."

The writer of such paper extols the New York statute. He believes, manifestly, that juries are not to be trusted. Here is his summary (p 124):

"It was to avoid this kind of situation that section 457-a was passed. Under that section, the court may direct a verdict if it would set aside a contrary verdict as against the weight of evidence. In a word, it is a new device, born of legislation this time, to prevent the rendition of unreasonable verdicts. Just as the evolution of jury control passed from the attaint to the fine, from the fine to the demurrer, from the demurrer to the new trial, from the new trial to the directed verdict where there was not more than a *scintilla* of evidence, so by statute the legislature has now carried to its logical end the idea of keeping the jury within the bounds of reasonableness."

The New York statute was, indeed, a "new device"; tried but now discarded. And Michigan has *never* seen fit to place the like of it in her statute books or rules of court. This New York statute no longer reads as it did when Professor Smith wrote, above, its design to keep juries "within the bounds of rea-

sonableness" (a task for the self-anointed, to be sure). It reads, now, with better sense:

"The court may direct a verdict when it would be required to set aside a contrary verdict for legal insufficiency of evidence." (Annual Practice of New York, Matthew-Bender 1960, § 457-a, Clevenger.)

Of course, our majority has a perfect right—being of such will—to utilize a discarded statute of another State and its professorial touch of 1924 in silent opposition to our own rule; a rule which originated over the signatures of Justices COOLEY, CAMPBELL, MARSTON, and GRAVES in *Woodin* v. *Durfee, supra;* a rule which but recently was unanimously characterized as having been written into "The leading case in Michigan [*Woodin*] which has often been quoted" (*Baldwin* v. *Nall,* 323 Mich 25, 29; present Justices DETHMERS and CARR concurring).

The writer, too, has another perfect right—that of dissent. *Woodin* has been quoted and continuously followed by this Court (*Hughes* v. *John Hancock Mutual Life Ins. Co.,* 351 Mich 302, 308; *Rogers* v. *City of Detroit,* 340 Mich 291, 297; *Cebulak* v. *Lewis,* 320 Mich 710, 718, 719 (5 ALR2d 186); *Cuttle* v. *Concordia Mutual Fire Ins. Co.,* 295 Mich 514, 519; *Green* v. *Detroit United Railway,* 210 Mich 119, 125; *Rotter* v. *Detroit United Railway,* 205 Mich 212, 230; *Crampton* v. *Crampton,* 205 Mich 233, 241; *Schweitzer* v. *Bird,* 204 Mich 333, 341, 342). Its doctrine was, in *Cuttle* v. *Concordia, supra,* developed this way (p 519):

"Uncontradicted testimony may be disentitled to conclusiveness because, from lapse of time or other circumstances, it may be inferred that the memory of the witness is imperfect as to the facts to which he testified, or that he recollects what he professes to have forgotten.";

and in *Crampton* v. *Crampton* (p 241):

"We have held that a jury may disbelieve the most positive evidence even when it stands uncontradicted; and the court cannot take from them their right of judgment. If they return what the court thinks is a perverse verdict, the court may set it aside, and order a new trial. *Woodin* v. *Durfee*, 46 Mich 424.

"Referring to the case last cited, Chief Justice Brooke, speaking for the court in *Yonkus* v. *McKay*, 186 Mich 203, 211 (Ann Cas 1917E, 458), said:

" 'The administration of justice does not require the establishment of a rule which compels the jury to accept as absolute verity every uncontradicted statement a witness may make.'

"In *Brand* v. *Johnrowe*, 60 Mich 210, referring to *Woodin* v. *Durfee, supra*, this Court held that the testimony of a certain witness was for the judgment of the jury, as they had the right to disbelieve the positive evidence given by him, and find from circumstances outside of his testimony a different state of facts."

Responsibility for the mischief of today's smoothly varnished departure, from our rule that a party bearing the burden of proof "cannot be allowed to assume that he has made out his case,"* is something I do not care to share. Once these opinions are released, thoughtful members of the profession will discern immediately another neoteric constriction of the right of a civil litigant to jury hearing and determination of his case or defense. Will the defendant in each jury-tried common-law negligence case, even though by court rule he now bears the burden of

---

* In *Pickel* v. *Isgrigg* (D Ind), 6 Fed 676 (handed down at the same time *Woodin* was released), the court put in these words the rule to which Michigan has adhered until now: "The evidence of a party, upon the affirmation side of an issue of fact before a jury, may be demurred to by the adverse party under certain conditions. The party upon whom the burden of the issue rests is not permitted to demur to the evidence of the other party, *for he cannot be allowed to assume that he has made out his case.*"

proving contributory negligence, not be enabled (as easily and conveniently as before) to move for a verdict by edict that contributory negligence has been established as a matter of law? Are we not witnessing, now, partial dismemberment of the original right of a jury in common-law cases to "disbelieve the most positive evidence, even when it stands uncontradicted" (*Woodin, supra*); to find in such case that "the memory of the witness is imperfect" on account of "lapse of time or other circumstances" (*Cuttle, supra*), or to "find [in such cases] from circumstances outside of his testimony a different state of facts" (*Crampton, supra*)? What about the never-easy-to-expose case of collusion between the plaintiff and the defendant when the latter is safely and fully insured, and what about the corresponding instance of sympathy of such a defendant for his victim and the human tendency toward "shading" of the defensive testimony? Which is to suggest that the invisible defendants of Michigan should be heard before we take this not-fully-considered step.

I make no allusion to Mrs. Hamil in latter regard. It appears from the transcript that she tried, fairly and honestly, to recall and coherently describe what happened, in a manifestly unanticipated split second, as she reached over to close the right-hand door with her foot on the brake pedal.* I do make allusion to the hundreds of future cases which, not coming to this Court at all, are bound to be affected (in law office as well as courtroom) by Nabozny's new rule that the trial judge may direct a verdict for the plaintiff when the triable charge against the defendant is actionable negligence by the common law and he, the judge, is satisfied by the standards of his own "experience, training and temperament" that such

---

* The transcript shows that the defendants are insured to the extent of $10,000 only as against this $30,000 judgment.

charge has been proved so thoroughly as to justify his taking over from the jury.

Turning now to another phase of the majority opinion. My Brothers have summoned, to the support of this instructed verdict, the most *unfavorable* (to defendants) portion of the testimony below, the purport of which is that defendants' car hit the truck occupied by plaintiff a second time. This, paraphrasing Mr. Justice VOELKER in *Shaw* v. *Bashore,* 353 Mich 31, 37, is "favorable view" with a vengeance, but solely from the burden-bearer's side. It is, by like token, more of that kind of "mere lip service" (of the principles anounced in *Van Steinburg*) Judge Martin noted with scorn in *Patterson* v. *Pennsylvania R. Co.* (CCA 6), 238 F2d 645, 650.

Until now, no hint or claim has been made that Mrs. Hamil intentionally, or recklessly, or negligently, propelled her car a *second* time into the other vehicle. If her car did strike the truck a second time the presently indicated inference is that Mrs. Hamil hurriedly and frantically stabbed—with her foot—at the brake pedal, only to hit the accelerator again in the excitement of an emergency caused by her previous negligent or nonnegligent conduct. Such emergency may or may not have been due to a want of due care on the part of Mrs. Hamil. It was plaintiff's burden to establish the affirmative on that score; not our duty to do so by calling up proof unfavorable to his opponents.

Mrs. Hamil was *not* guilty of having driven in violation of the "assured clear distance" rule (this is the exclusive charge plaintiff makes against Mrs. Hamil in his brief.)* She was not even "driving"

---

*"No person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured, clear distance ahead." PA 1949, No 300, § 627, as amended by PA 1957, No 190, and PA 1959, No 76 (CLS 1956, § 257.627, as amended [Stat Ann 1960 Rev § 27.627]).

within meaning of that rule when the causative events took place. Her car was stopped, at the curb. It suddenly shot forward. What happened was non-actionable accident by the common law or actionable negligence by the common law. Once this is understood thoroughly, the legal cobwebs should disappear from the case at bar.

No statute or so-called "rule of safety" requires that a driver place the transmission of his car in "neutral" when the car is stopped with the engine running. No statute or rule commands that the transmission lever be moved to "neutral" when (with the motor running and the car stopped), the driver moves, slightly, from his or her normal driving position. No statute or rule pronounces it negligence, or presumptive negligence, to do or attempt to do what Mrs. Hamil related. The common law indeed may impose a duty or duties in such regard with respect to which a properly instructed jury probably would find in the affirmative. This plaintiff nevertheless bore the burden of persuasion of liability. He should be put to that burden before a jury, principally for the sake of preserving precedentwise the pricelessly precious and ever-slyly beset right of trial by jury. If, then, the jury should return what to the trial judge is "a perverse verdict," he may proceed as authorized by *Woodin.*

My Brothers say they can conceive of no inference which would lead any "reasonable" person to arrive at conclusion other than that Mrs. Hamil was actionably negligent. I answer that the proper inference, drawn of course on favorable view, is that Mrs. Hamil carefully put her foot on the brake pedal to prevent movement of the car and that her foot, despite such care, slipped accidentally from the pedal to the accelerator. Such is the way Judges COOLEY, CAMPBELL, MARSTON and GRAVES (all supposedly "reasonable" persons) would from their con-

sistent writings have looked upon this instructed verdict, and such is the way the supreme court would now look upon it assuming as we should that the well-reasoned opinions of *Stout* and *Ives*\* (quoted above) stand as good law in the national supreme court building.

I would reverse and remand for new trial.

Kavanagh, J., concurred with Black, J.

Edwards, J. The facts relevant to the issue of negligence in this case were related at trial by defendant Mrs. Hamil:

"*Q.* What kind of car was it you were driving on this particular day?
"*A.* A 1956 Buick. * * *
"*Q.* What kind of a shift did this car have? * * *
"*A.* Automatic. I am not very well acquainted with cars but it has an automatic gearshift, is that what you mean? * * *
"*Q.* Now, on the day in question, you took your little boy to the barber shop?
"*A.* My son, yes sir. * * *
"*Q.* You pulled up on Nine Mile road behind a Ward Baking Company truck?
"*A.* Yes, sir.
"*Q.* How much room was there between the back of the truck and your car?
"*A.* Whatever distance there is between cars in a parking space, as far as I can remember I was

---

\* "The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative signifiance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case, may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs." (*Ives,* p 417.)

parked in the parking space directly behind the truck.

"*Q.* What happened when you let your little boy out?

"*A.* He hadn't closed the door and I believe I reached over to close the door and when I did my foot slipped from the brake onto the accelerator and caused my car to move.

"*Q.* Was the car in driving position when you did that?

"*A.* Yes, sir.

"*Q.* Did you have a parking brake in your car?

"*A.* A parking brake? There was a foot brake and an emergency brake.

"*Q.* Did you put your emergency brake on?

"*A.* No.

"*Q.* You had your foot on the brake pedal and you say your foot slipped off the brake pedal?

"*A.* From the brake pedal onto the accelerator.

"*Q.* And what happened?

"*A.* My car moved forward.

"*Q.* Would you say it moved forward rapidly?

"*A.* I couldn't tell you how fast it was.  *  *  *

"*Q.* What happened, did your car move forward slowly or did it move forward fast?

"*A.* I don't know, I have no idea, it must have gone fast, it happened very fast but as far as the speed of my car is concerned, I have no idea.

"*Q.* Did your car hit the truck?

"*A.* Yes, sir.

"*Q.* What happened to the truck, when you car hit it?

"*A.* I don't know, I really couldn't tell you, it happened so fast. I know after the accident I could see the truck had moved, but during the accident I couldn't tell.

"*Q.* Did you hit the truck the second time?

"*A.* I guess I did. I have heard testimony here how my car bounced back and forth.

"*Q.* From the time you started out until you hit the truck, did you put your foot on the brake?

"*A.* After may foot slipped from the brake onto the accelerator, in the motion of reaching over I don't see how I could get my foot back.

"*Q.* What position was your body in at the time?

"*A.* I imagine I was reaching for the door and before I got myself upright, it happened.

"*Q.* The car shot forward so fast you didn't have an opportunity to change your position?

"*A.* That is right.   *   *   *

"*Q.* Were you issued a violation ticket as a result of this accident?

"*A.* Yes, sir.

"*Q.* How did you plead in court?

"*A.* I pleaded guilty.

"*Q.* To what charge?

"*A.* Driving without due care and caution."

Plaintiff, who was injured in this accident, was the driver of the parked bread truck which Mrs. Hamil's car struck.

Three independent witnesses also testified to seeing 2 separate impacts. The undisputed testimony of 1 of them follows:

"*A.* First we saw the—I saw the bread truck drive up and stop. There were 2 men in the truck. One seemed to be standing on the running board while the other, I think he was driving while the other was delivering bread, and the truck stopped and shortly after this lady came up in her Buick behind the truck and she let a little boy out and I believe that the little boy was clear of the car but forgot to shut the car door and in reaching over to shut the car door, I don't know what happened, but the car shot forward and hit the truck ahead of it and then it seemed to slightly bounce back and then shot forward again and hit the truck again up onto the sidewalk.

"*Q.* Did you see Mr. Nabozny at that time?

"*A.* Yes.

"*Q.* Where was he?

"*A.* He was near the front of the truck, not behind the wheel but in the truck.

"*Q.* What happened to Mr. Nabozny, as far as you saw?

"*A.* I could see him being shot backward and forwards.

"*Q.* What happened the second time the car hit the truck?

"*A.* I believe that was still going on, I could see him bounce back and forth against the racks."

At the completion of testimony, the trial judge instructed the jury that defendant was guilty of negligence which was the proximate cause of this accident and submitted the issue of damages for jury consideration.*

We agree with Mr. Justice Black that generally the question of negligence is a question of fact for the jury. *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich 99; *Ohman* v. *Vandawater,* 347 Mich 112; *Kaminski* v. *Grand Trunk Western R. Co.,* 347 Mich 417; *Normand* v. *Thomas Theatre Corporation,* 349 Mich 50; *American Airlines, Inc.,* v. *Shell Oil Company, Inc.,* 355 Mich 151.

On this record, however, we believe there were no facts in dispute and the negligence of defendant was crystal clear. In such instances this Court has held that negligence or contributory negligence was established as a matter of law. *Morrison* v. *Demogala,* 336 Mich 298; *Lewis* v. *Yund,* 339 Mich 441; *Churukian* v. *LaGest,* 357 Mich 173.

In this last case the Court said (p 179):

"This Court has in recent years frequently reiterated that it must be a very clear case to justify a trial judge in taking a negligence action from the jury on grounds of contributory negligence. *Kaminski* v. *Grand Trunk Western R. Co.,* 347 Mich 417; *Ware* v. *Nelson,* 351 Mich 390.

---

* On remarkably similar facts, a New York court recently granted a plaintiff summary judgment on the issue of liability. *Cacciato* v. *Leatherman,* 23 Misc2d 550 (200 NYS2d 152).

"See, also, *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich 99.

"This seems to us to be such a case."

We believe this language equally applicable to the factual record presented by the present case even though the verdict was directed for the plaintiff rather than the defendants.* It should be noted that there is no issue of credibility posed by this case. And we can conceive of no inference which could be drawn from the undisputed facts which would lead any reasonable person to arrive at any other conclusion as to defendant's conduct than that reached by the trial judge.

As to appellants' second question, taking the judge's charge as a whole, we find no prejudicial error.

Affirmed.   Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, SMITH, and SOURIS, JJ., concurred with EDWARDS, J.

---

* For discussion of the legal principles involved in directing verdict for a plaintiff, see 3 Cooley on Torts (4th ed), § 481; Sunderland, Directing a Verdict for the Party having the Burden of Proof, 11 Mich L Rev 198; Smith, The Power of the Judge to Direct a Verdict, 24 Columbia L Rev 111.