HARDY *v.* MACHAMER.

1. AUTOMOBILES — NEGLIGENCE — PEDESTRIANS — PICKET LINE — CONTRIBUTORY NEGLIGENCE — QUESTIONS FOR JURY.

Issues of negligence of defendant truck driver and of contributory negligence of plaintiff pedestrian, picketing entrance to millyard *held,* appropriate only for jury resolution after there had been disagreement of jurors before whom action was tried, for alleged injuries received when an effort was made to have truck pass picket line (CL 1948, § 618.53; GCR 1963, 512.3).

2. SAME—PEDESTRIANS—STATUTES—PICKETING—PRIVATE WAY.

Pedestrian statute, so-called, does not apply to action for alleged injuries sustained by pedestrian who was participating in a picket line at entrance to yard of a paper mill, where plaintiff was not walking upon the main traveled portion of a public highway but was walking back and forth across a driveway leading from the main traveled portion of a highway into the millyard (CLS 1961, § 257.655).

DETHMERS, KELLY, and O'HARA, JJ., dissenting.

Appeal from Ontonagon; Wright (Robert R.), J. Submitted May 7, 1964. (Calendar No. 59, Docket No. 50,076.) Decided February 2, 1965.

Case by Raymond K. Hardy against Paul Machamer and J. R. Spolarich for personal injuries sustained when hit by truck. Directed verdict and judgment for defendants following disagreement of jury. Plaintiff appeals. Reversed and remanded for new trial.

REFERENCES FOR POINTS IN HEADNOTES

[1] 8 Am Jur 2d, Automobiles and Highway Traffic § 1012 *et seq.*
[2] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 242 *et seq.,* 393, 396.

*George H. Sutton,* for plaintiff.

*Humphrey & Weis (Charles M. Humphrey, Jr.,* of counsel), for defendants.

O'HARA, J. (*dissenting*). The negligence and contributory negligence issues in this case are almost completely obscured by the existence, at the time of the claimed accident, of a controversy between 2 groups of pulpwood suppliers in Ontonagon county.

One group, advocating organization among the suppliers, had stopped delivery of their pulpwood to a papermill in an effort to raise the price paid for their product. Other suppliers apparently were willing to deliver their product at the established price. The mill management was not involved in the controversy between the 2 groups, nor were its employees. In publicizing their dissatisfaction with the pulp prices, the organized group formed a line and walked back and forth across the entrance to the mill, a driveway coming off M–64, a State trunkline highway. With delicacy appropriate to the situation, the trial judge in his opinion described the actions of the group favoring organization as "walking in massed formation in the entrance, * * * engaged in what has been referred to during the case as picketing." Those suppliers, who were intent upon delivering their products, had their trucks parked across M–64 from the entrance. One of their number, the defendant Machamer, driving the truck owned by defendant Spolarich, attempted to drive his load into the millyard. At some point, it is claimed, the vehicle came into contact with the plaintiff. It is completely impossible from the record to determine how contact was made, if at all. The atmosphere at the time and place was obviously explosive. The prosecuting attorney, the

sheriff and several deputies were there. A petition for an injunction against preventing ingress and egress of the suppliers desiring to enter was pending in the circuit court. One witness, a deputy sheriff, testified that he observed plaintiff "pushing against" the front of defendant's truck, and that defendant's truck was "just crawling." Defendant driver, who did not know plaintiff at the time, denies he struck anyone and that he just "gently" crowded his truck toward the scale shack while the dissident suppliers tried to stop him, and tried to get into his vehicle. A justice of the peace testified plaintiff came to him on the day of the accident, helped by a comrade, limping and in pain, seeking a warrant, but that while in his office, word came that trucks were getting through the line and that plaintiff took off "half running" down the street singularly free from any limp. Plaintiff's brother says defendant was driving 20–25 miles an hour as he approached the group. Plaintiff makes the same estimate of speed. He describes his contact with the truck as either "bouncing him" or that he "might have flown," and that he got hit on his right side.

The jury disagreed.[1] Thereafter, on motion previously made the trial judge found plaintiff contributorily negligent as a matter of law by reason of placing himself in a position of danger; his complete failure to see the truck as it approached him, because he was walking on "public property wherein the highway lies at the entrance of the mill" and was, in consequence of turning his back on the approaching truck, violating the "pedestrian statute."[2]

[1] The trial judge elected not to empanel a new jury after the jury disagreement pursuant to CL 1948, § 618.53 (Stat Ann § 27.1033).

[2] PA 1949, No 300, § 655 (CLS 1961, § 257.655 [Stat Ann 1960 Rev § 9.2355]) which reads:

"Where sidewalks are provided, it shall be unlawful for pedestrians to walk upon the main traveled portion of the highway. Where sidewalks are not provided, pedestrians shall, when practicable, walk on the left side of the highway facing traffic which passes nearest."

The situation created by the controversy between the supplier groups is inextricably interwoven with the duties incumbent upon both plaintiff and defendant at the time. Certainly in determining tort liability, or freedom therefrom, the legal duties of both plaintiff and defendant have to be measured by the situation then existing and of which each was fully aware. We decline to place the stamp of judicial approval upon the conduct of either party, as that conduct was portrayed testimonially by the various witnesses. Only a madman would drive a loaded pulp truck 20–25 miles per hour into a group of fellow human beings. Had defendant in fact done so, carnage would have resulted. Only an idiot would attempt to stop the progress of the same truck by matching strength with its power plant by trying to push it backwards. We sympathize with the trial judge in attempting to apply the controlling rule of law to this case. He properly assumed for the purpose of the motion for a directed verdict that "the defendants were guilty of negligence which was the proximate cause of plaintiff's alleged injuries." He then detailed the bases for his holding the plaintiff guilty of proximately causal contributory negligence. They are as follows:

"He [plaintiff] claimed that at the time he was struck he had reached the east end of the oval formation and had turned his back to traffic entering the millyard at that intersection. In other words, he was just turning to march to the other side of the entrance. The pickets were walking in a counterclockwise direction. Plaintiff and the other pickets were not walking the length of any highway for a purpose of arriving at a planned destination, but walking back and forth crosswise in the entrance of the mill. When the plaintiff and the other pickets as well, made a turn at the east side of the entrance, their backs were exposed to the traffic entering the mill-

yard. When they reached the west side of the entrance and made their turn, their backs would be to the traffic coming out of the millyard. Using the standard set up by the legislature in the statute governing pedestrians on a highway, it is obvious the plaintiff did not use due care for his own safety. The plaintiff had knowledge that trucks loaded with pulpwood would attempt to enter the millyard. He certainly had reason to suppose the defendants' truck might make further attempts to do so. The plaintiff who had been on the picket line 4 or 5 different days, and the other pickets, knew the purpose for which defendants' truck load of pulpwood was in that vicinity. The plaintiff knew the nature of the controversy that existed. The plaintiff and the other pickets knew the reason for the truck being parked across from the entrance to the millyard. His testimony is that he did not see the truck move or leave the place where it was parked. The other pickets were not struck although they were walking a few feet apart. The plaintiff admits that he did not take the precaution of looking to see if anyone was approaching before turning his back to any traffic which might be attempting to enter the millyard at that time. Had plaintiff looked, he could and should have seen the defendants' truck coming, for his testimony was that he was struck immediately upon turning.

"Plainly the plaintiff was not using due care for his own safety under the circumstances then existing in this case. The plaintiff voluntarily placed himself in a position of danger and from his own testimony it appears as a matter of law that he did not take the precautions that an ordinarily prudent person would have taken under the same circumstances. The court is of the opinion that reasonable minds cannot differ on this question."

As noted by Mr. Justice SOURIS in the recent case of *Ingram* v. *Henry*, 373 Mich 453, 457:

"As we have said repeatedly in recent years (see *Ackerberg* v. *Muskegon Osteopathic Hospital,* 366 Mich 596, *Hoag* v. *Fenton,* 370 Mich 320, and *Todd* v. *Simonis,* 370 Mich 342), what constitutes due care for one's own safety, like what constitutes negligent conduct toward others, is a question of fact and not of law. As such it must usually be left for determination by the jury, where a jury has been demanded."[3]

This precedent we do not here dilute. However, under the circumstances of the instant case we believe the trial judge was entitled to conclude that plaintiff's own testimony was "manifestly incredible" and compelled the finding that he was guilty of contributory negligence as a matter of law. See footnote 3, *Todd* v. *Simonis,* 370 Mich 342, at p 345:

"Such possible conclusion, properly within the province of a jury to make on the testimonial record we review, distinguishes this case of *Todd* from our holdings in *Kowalski* v. *Malone,* 326 Mich 254; *Brenner* v. *Dykstra,* 289 Mich 301; and *Nelson* v. *Linderman,* 288 Mich 186, relied upon by defendants. In those 3 cases, the Court (professing to take the favorable view) concluded that the facts as claimed in plaintiffs' own testimony were manifestly incredible and compelled finding plaintiffs contributorily negligent."

The order granting defendants' motion for a directed verdict should be affirmed. Our decision here renders moot defendants' pending motions to affirm or dismiss and to dismiss plaintiff's appeal for failure to pursue it in conformity with the applicable rule.

Costs to appellees.

---

[3] See, also, Mr. Justice BLACK's vigorous dissent in *Nabozny* v. *Hamil,* 361 Mich 544. Both the decision in *Ingram, supra,* and the dissent in *Nabozny* reaffirm our adherence to Mr. Justice COOLEY's premise that "as a general rule it cannot be doubted that the question of negligence is a question of fact and not of law."

DETHMERS and KELLY, JJ., concurred with O'HARA, J.

SOURIS, J. The testimonial record, as described by Mr. Justice O'HARA, presents disputed questions of fact appropriate only for jury resolution. The trial judge should have empaneled another jury upon disagreement of the jurors before whom this case was tried. CL 1948, § 618.53 (Stat Ann § 27.1033). For current counterpart rule, see GCR 1963, 512.3.

The "pedestrian statute", quoted by Justice O'HARA, CLS 1961, § 257.655 (Stat Ann 1960 Rev § 9.2355), is not applicable to the facts disclosed by this record. Plaintiff was not walking "upon the main traveled portion of the highway"; he was walking, instead, back and forth across a driveway leading from the main traveled portion of a highway into the millyard.

Accordingly, I would reverse and remand for new trial, and I would assess costs against appellees.

KAVANAGH, C. J., and BLACK, SMITH, and ADAMS, JJ., concurred with SOURIS, J.